**Joe David TONEY et al., Plaintiffs-Appellants,**

v.

**Ronald REAGAN et al., Defendants-Appellees.**

**No. 71-1588.**

United States Court of Appeals, Ninth Circuit.

Sept. 8, 1972.

Rehearing Denied Oct. 5, 1972.

Certiorari Denied Jan. 15, 1973.
See 93 S.Ct. 951.

James N. Penrod (argued), Mark Himelstein, of Penrod & Himelstein, San Francisco, Cal., for plaintiffs-appellants.

Donald B. Day, Deputy Atty. Gen. (argued), Norman L. Epstein, Frances Rothschild, ·Evelle J. Younger, Atty. Gen., San Francisco, Cal., for defendants-appellees.

Before WRIGHT and CHOY, Circuit Judges, and POWELL, District Judge.*

EUGENE A. WRIGHT, Circuit Judge.

During the 1970–71 academic year appellants were probationary (nontenured) professors at Fresno State College in California. In the fall of 1970 they were notified that the college did not in-

---

* Honorable Charles L. Powell, Senior United States District Judge, Eastern District of Washington, sitting by designation.

tend to offer them employment for the ensuing year.[1]

It appears that the appellants had actively criticized the college administration and had openly opposed the Viet Nam war. Some had participated in draft counseling programs, others had supported the work of Cesar Chavez and the United Farmworkers Organizing Committee. Professor Toney had been an outspoken proponent of Black student aspirations on campus. All appellants had taken part in demonstrations to publicize their views.

Appellants allege that they were not rehired because of the exercise of their First Amendment rights of free speech and assembly.

The California State College System has established a grievance hearing procedure which was available to appellants. This procedure was promulgated by Executive Order 112 of the Chancellor, acting pursuant to 5 Cal.Adm.Code § 42174. Appellants filed timely grievances in December 1970.

The following month they brought this civil rights suit in the District Court for the Northern District of California. The action was described as twofold. First, the plaintiffs sought an order reinstating them to the faculty for the 1971–72 academic year. Second, they asked the convening of a three-judge district court pursuant to 28 U.S. C. §§ 2281, 2284 to enjoin the enforcement of Executive Order 112 on the ground that the procedures outlined therein are unconstitutional.

A three-judge court was convened and appellants' claims were heard. That court then dissolved itself, holding that the case was proper for adjudication by a single district court judge. A district judge sitting alone considered the issues and ruled that the plaintiffs had stated a cause of action but that they had failed to exhaust an adequate prospective state administrative remedy as required by our decision in Whitner v. Davis, 410 F.2d 24 (9th Cir. 1969). The trial judge denied a preliminary injunction against proceedings under Executive Order 112 but retained jurisdiction to hear the cause on the merits following the completion of the state hearings. Toney v. Reagan, 326 F.Supp. 1093 (N. D.Cal.1971).

Appellants appeal from the denial of a preliminary injunction. They also appeal from the order dissolving the three-judge court. After argument we delayed submission of the matter to await the Supreme Court's decisions in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

## I. CAUSE OF ACTION.

Under the doctrines set forth in *Roth* and *Perry*, appellants' lack of tenure does not defeat their claim that the nonrenewal of their contracts violated their First Amendment rights. In *Perry* the Supreme Court specifically reaffirmed prior holdings that "the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights." p. 598, 92 S.Ct. p. 2698. The Court stated:

"For at least a quarter century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which

---

1. One was offered an appointment for a terminal year but was denied tenure.

[it] could not command directly.' Speiser v. Randall, 357 U.S. 513, 526 [, 78 S.Ct. 1332, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible." p. 597, 92 S.Ct. p. 2697.

■ Thus the allegation that the appellants were not rehired because of their exercise of their First Amendment rights states a cause of action cognizable under the civil rights statutes.

Of course, appellants have not proved that the nonrenewal was a result of their expression of their opinions. They have only alleged it. But their allegations are sufficient to entitle them to present their evidence to the district court and to obtain relief if they prevail.[2]

## II. RIGHT TO A HEARING.

■ The district court correctly found that appellants are nontenured. *Roth* holds that the Due Process Clause of the Fourteenth Amendment does not impose upon state schools an obligation to grant a hearing to a nontenured teacher whose employment is not renewed.

## III. EXHAUSTION OF ADEQUATE PROSPECTIVE STATE ADMINISTRATIVE REMEDIES.

■ Despite the absence of a federal constitutional requirement that a hearing be provided, Executive Order 112 provides a state hearing procedure. This is a matter of state policy, not federal constitutional law. *Cf. Roth*, p. 578, 579, 92 S.Ct. 2710.

The issue then becomes whether, under Whitner v. Davis, *supra,* appellants were required to avail themselves of the state administrative remedy.

■ Claims under the Civil Rights Acts are not generally subject to the requirement that state remedies be first exhausted. The remedy provided by the federal statutes "is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). *See* Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

However, in Whitner v. Davis, 410 F.2d 24 (9th Cir. 1969), this court, citing *Houghton, Damico, McNeese* and *Monroe,* held that prospective, as distinguished from retrospective, state administrative remedies must be exhausted in order to state a claim upon which relief can be granted under the Civil Rights Acts.

In November 1970, when appellants were notified that they would not be reemployed in the fall of 1971, the alleged injury to their constitutional rights was not yet consummated. There was a threat that their employment would be terminated at a foreseeable time in the future. But they were not discharged. They were still assured of employment through the end of the current academic year.

The grievance procedures in this case would not operate to rectify a wrong which had already occurred. Rather, they were a means of forestalling a threatened deprivation of rights which was not to transpire for several months. In the event that appellants were to utilize the state hearing procedures, they might successfully reverse the decision not to reemploy them, have their contracts renewed, and suffer no break in their employment.

■ Under these circumstances, appellants were required to exhaust a state administrative procedure which would provide "a fair opportunity to present [their] version of the facts and law."

---

2. This is subject to the discussion, *infra,* regarding exhaustion of adequate prospective state administrative remedies.

Whitner v. Davis, *supra,* 410 F.2d, at p. 29. *Cf.* Stevenson v. Bd. of Ed., 426 F. 2d 1154, 1157 (5th Cir. 1970), cert. denied 400 U.S. 957, 91 S.Ct. 355, 27 L. Ed.2d 265 (1970). Indeed, if the administrative remedy designed to forestall the threatened discharge was "adequate," then "refusal to make use of it constituted an acceptance of the discharge and prevents [appellants] from establishing a claim under the Civil Rights Acts." *Whitner,* 410 F.2d at p. 29.

The district court thus was correct in ruling that the appellants were required to exhaust the procedures outlined in Executive Order 112, if those procedures were "fair and adequate."

## IV. ADEQUACY OF THE STATE REMEDY.

We do not understand the appellants to question the applicability of the *Whitner* doctrine to this case. Rather they vehemently attack the adequacy and fairness of the procedures contained in Executive Order 112.

The Executive Order sets up a carefully considered, very detailed grievance procedure. It may be invoked by any academic employee who claims to have been wronged in connection with rights of job classification, benefits, working conditions, appointment, reappointment, tenure, promotion, reassignment or the like.

The grievant is first required to make a reasonable attempt to resolve the problem amicably on an informal basis. If such efforts are unavailing, he initiates formal proceedings by written notice to the President of the college, specifying the alleged wrong.

A hearing panel of three members is then selected by lot from the tenured faculty. The grievant and certain specified members of the administration may each exercise two peremptory challenges and an unlimited number of challenges for cause.

The panel makes an initial determination whether a hearing is required. If this initial determination is negative, the panel states its reasons and proceedings are at an end. If the determination is affirmative, notice of the hearing is sent to the appropriate persons.

At the hearing the grievant presents his evidence first and bears the burden of persuasion. He has the right to examine all evidence presented to the panel and to question witnesses. The hearing is not conducted according to technical judicial rules of evidence. Rather, any relevant information is admitted "if it is the sort of evidence on which responsible persons are accustomed to rely." Lawyers are specifically excluded from the proceedings.

A tape recording, but not a transcription, of the hearing is made. The proceedings and the findings and recommendations of the panel are confidential and may not be made public except as they may be filed in court or introduced into evidence in an administrative or judicial proceeding brought to review the action taken pursuant to the grievance procedures.

The panel makes a written report of its findings and recommendations which it forwards to the President. The President's decision, final at the campus level, "shall concur with the recommendations of the [panel] except in rare instances when, in the opinion of the President, compelling reasons exist for a different result." In such a case the President must consult with the panel in an attempt to iron out the disagreement. Failing agreement, the President must detail in writing his "compelling reasons."

In these rare instances when the President overrides the decision of the hearing panel, the Executive Order provides for an appeal to the Chancellor of the State College System. Upon such an appeal, the Chancellor or his designated officer determines whether consideration is appropriate. If review is granted, a Review Committee of three members, chosen by lot from members of the state college faculties, scrutinizes the entire

grievance proceeding and makes a written recommendation to the Chancellor. The Chancellor's decision, which is final under Executive Order 112, "shall agree with the Committee's recommendation except in rare instances and for compelling reasons" which the Chancellor must set forth in the written notice of his decision.

Stringent deadlines written into the Executive Order move the proceedings along with dispatch.

The issue before us is whether the procedures outlined in the Executive Order constitute a "fair and adequate" prospective state remedy, *i. e.*, whether the procedures present appellants with a fair opportunity to be heard and a realistic expectation that resort to the proceedings may forestall the threatened action which is alleged to be a deprivation of their constitutional rights. Whitner v. Davis, *supra.*

Appellants attack several aspects of the Executive Order which they claim make it inadequate. We do not find any of these singly, or all of them together, to be of such weight as to render the procedures inadequate.

■ 1. *Rules of Evidence and Exclusion of Counsel.* Appellants object to the absence of judicial rules of evidence and the exclusion of counsel from the hearing. However, it is not essential in all circumstances to a fair and adequate hearing that it be conducted in a trial-like atmosphere, complete with attorneys to challenge offered evidence and legally trained hearing officers to rule on evidentiary questions. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Lucas v. Chapman, 430 F. 2d 945 (5th Cir. 1970); Dixon v. Alabama State Board of Education, 294 F. 2d 150 (5th Cir. 1961); cert. den. 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). *Cf.* Perlman v. Shasta Joint Junior College District, 9 Cal.App.3d 873, 88 Cal.Rptr. 563 (1970); Goldberg v. Regents of University of California, 248 Cal.App.2d 867, 57 Cal.Rptr. 463 (1967).

A proceeding may provide a fair and adequate opportunity for the grievant to present his side of the issues without either the legal technicalities of the hearsay rule or the presence of counsel. It is quite sufficient that the hearing panel consider evidence "which reasonable men are accustomed to rely on." And we can well understand that when intelligent, educated college professors are weighing issues of tenure and faculty qualifications—issues crucial to the integrity of an academic institution—they might prefer to deal with their peers rather than with the bar. *Cf.* Lucas v. Chapman, *supra;* Perlman v. Shasta Joint Junior College Dist., *supra.*

We are not unmindful of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970), in which the Supreme Court held that welfare recipients threatened with termination of their benefits, an action which would infringe their statutory right to uninterrupted public assistance, were entitled to have the assistance of *retained* counsel if they wished. However, welfare recipients dealing with state officials are a class far more likely to be in need of the services of counsel than college professors dealing with their peers.

■ In the absence of a showing of special circumstances in this case requiring the presence of counsel, we are unwilling to invalidate the state procedures on this ground. *Cf.* Griffin v. California Adult Authority, 464 F.2d 602 (9th Cir. 1972) (dealing with parolees, again a class much more in need of counsel).

2. *Role of the President.* Appellants assert that the person who decided not to rehire them is also the one with the ultimate authority in the grievance proceeding. However, this is an overstatement of the facts. First, the decision not to renew employment is not made by the President alone. Rather the determination whether to offer reemployment to a nontenured faculty member begins when a departmental committee makes a

recommendation to the department chairman. The chairman makes a separate recommendation and forwards both to the dean of the school. The dean makes his own recommendation. There may be more committees and other officials involved as well. The President then makes the final decision on the basis of this record.

■ Second, the President is hardly the final judge under the grievance procedure. Appellants object that "in rare instances" and for "compelling reasons" the President can overrule the hearing panel's recommendation. But in these rare cases a carefully constructed appeal to the Chancellor and the Chancellor's Review Committee is provided. This is a reasonable check against an arbitrary decision by the President.

■ 3. *Possibility of No Hearing.* The possibility that the original hearing panel may decide that no hearing is necessary hardly invalidates the procedures. Someone must weed out the frivolous and insubstantial claims.

■ 4. *Tape Recording and Transcript.* In the event of an appeal to the Chancellor's level, the grievant must pay for the preparation of a transcript and provide one to the college as well, pledging that he will keep confidential the contents of the transcript. While this provision hardly strikes us as ideal, we do not think it invalidates the entire Executive Order.

5. *Statement of Reasons.* The only attack mounted by appellants which gives us pause is the claim that they would not, at any time prior to the hearing, receive a written statement of reasons for the college's refusal to renew their contracts.

It is very difficult for a grievant to demonstrate that nonrenewal is a result of retaliation for the exercise of First Amendment rights. Even when he demonstrates a background of unappreciated expression and controversy, the trier of fact will still recognize that different, independent grounds may have justified the nonrenewal. Thus as a practical matter, at a hearing where the grievant has the burden of proof, he has scant chance of vindicating himself unless he can at least cast doubt upon the reasons which might be cited to support the college's decision.

When the college gives the grievant a written statement of reasons, he then knows what he must meet and has the opportunity to attack and discredit the reasons given. Without such a statement he can only assert what he surmises the reasons to have been and then tilt vainly with all possible hypothetical bases on which the college might have acted.

We note especially that the grievant has but one opportunity to present evidence—at the initial hearing. The Chancellor's Review Committee does not receive new evidence. The grievant is thus at a significant disadvantage, not knowing the charges he must meet. If he were to be surprised at the hearing by a hitherto unknown accusation, the whole proceeding could be reduced to a sham. In these circumstances we cannot find that any interest the college may have in not giving reasons outweighs the need of a grievant who has specifically requested a statement of reasons.

However, the grievant is required to seek informal resolution of the problem at the beginning of the proceedings. It may be argued that this is reasonably calculated to give the grievant notice of the reasons for which the college acted.

■ At the informal stage these appellants obtained copies of the various committee, departmental and deans' rating reports and recommendations (containing both favorable and unfavorable comments) which clearly provided the basis on which the college had made its decision. Thus, whatever may be the failing of a procedure which does not provide a statement of reasons prior to

hearing, these appellants suffered no prejudice and cannot complain of it. For, at the time they filed their complaint in the district court, they had actual notice of the reasons the college asserted to support nonrenewal.

We note that of the six original appellants, three went through the grievance procedure. One, Professor Toney, was vindicated and reinstated. Another, Professor Mabey, was unsuccessful. The outcome of the third proceeding has not been communicated to us by the parties. We view Professor Toney's success as a further indication that the state remedy was not futile and inadequate.

Our quest here is not for the perfect grievance procedure. Nor do we seek a full due process hearing such as Perry v. Sindermann, *supra*, tells us that a tenured professor would command. Rather the inquiry is whether the California procedure is fair and adequate. We conclude that the state remedy was fair and adequate as to these appellants and that under Whitner v. Davis, *supra*, they were required to exhaust it.

## V.   THE THREE JUDGE COURT.

We turn to the appeal from the order dissolving the three-judge court. Under recent Supreme Court holdings appeals from such orders lie to the relevant Court of Appeals. Mengelkoch v. Industrial Welfare Commission, 393 U.S. 83, 89 S.Ct. 60, 21 L.Ed.2d 215 (1968), Wilson v. City of Port Lavaca, 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636 (1968). *Cf.* Moore Federal Practice ¶ 110.03[3].

■ We believe that the appealable order denying a preliminary injunction brings with it the entire case, including the order dissolving the three-judge court. Smith v. Vulcan Iron Works, 165 U.S. 518, 17 S.Ct. 407, 41 L.Ed. 810 (1897). Any other rule would artificially bifurcate this case and unhappily delay necessary appellate review of the three-judge court's order. Moreover we expect that the Supreme Court will

eventually conclude that such three-judge court orders are reviewable under our mandamus power even in the absence of an appealable order from the single district court judge. *See* Currie: Appellate Review of the Decision Whether or Not to Impanel a Three-Judge Federal Court, 37 University of Chicago Law Review 159 (1969).

Appellants sought the convening of a three-judge district court to consider their claim that the procedures established by Executive Order 112 are unconstitutional. They argue that the regulation embodies a significant statewide policy within the doctrine of Jackson v. Nelson, 405 F.2d 872 (9th Cir. 1968) and Gilmore v. Lynch, 400 F.2d 228 (9th Cir. 1968), cert. denied 393 U.S. 1092, 89 S.Ct. 854, 21 L.Ed.2d 783 (1969). *Cf.* Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970) (three-judge panel), aff'd Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971).

The three-judge panel considered this claim and then dissolved itself. The judgment of that court was that the "thrust" of this lawsuit was directed against the college's decision not to renew appellants' contracts and not against the Executive Order.

This is essentially a problem of characterizing the lawsuit. If the action is seen as one to enjoin the nonrenewal of appellants' contracts, the issue involving Executive Order 112 is its adequacy as a prospective state administrative remedy. This is clearly a matter for a single district judge. On the other hand if the appellants are permitted artificially to recast the suit, and assuming that the executive order falls within the doctrine of *Jackson* and *Gilmore*, then it can be argued that the issue is the constitutional due process adequacy of Executive Order 112 and that the cause should be before a three-judge panel.

In such event it might be necessary for a three-judge panel to consider the constitutional adequacy of the executive order and for a single judge to consider

the adequacy of the executive order as a state remedy—hardly an efficient utilization of judicial resources—or to have the tail drag the dog and have the whole civil rights suit tried before the three-judge panel on a pendent jurisdiction theory.

Be that as it may, in light of the principle that the jurisdiction of three-judge district courts is to be strictly construed, Mitchell v. Donovan, 398 U.S. 427, 431, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941), and because we agree with the three-judge panel that this suit is more realistically construed as an attack on the President's decision not to renew appellants' contracts rather than as an attack on the statewide enforcement of Executive Order 112, we hold that the three-judge court properly dissolved itself, leaving the consideration of the civil rights claims and the adequacy of the state remedy to a single district court judge.

## VI. CONCLUSION.

Since appellants failed to exhaust a fair and adequate prospective state administrative remedy, as required by Whitner v. Davis, *supra*, the district judge was correct in denying a preliminary injunction and in retaining jurisdiction to hear the cause on the merits after the completion of the state hearings.

Affirmed as to appellants Dutton, Ruhl, Mabey, and Frost.

Dismissed as moot as to appellant Toney, without prejudice to a request to amend his complaint in the district court.

Dismissed as to appellant Hall, who withdrew from this appeal.