**Howard B. BURDEAU, Plaintiff-Appellant,**

v.

**TRUSTEES OF the CALIFORNIA STATE COLLEGES et al., Defendants-Appellees.**

**No. 73–1622.**

United States Court of Appeals,
Ninth Circuit.

Nov. 29, 1974.

---

Howard B. Burdeau in pro per.

Evelle M. Younger, Atty. Gen., Los Angeles, Cal., for defendants-appellees.

Before TRASK, CHOY and GOODWIN, Circuit Judges.

## OPINION

TRASK, Circuit Judge:

This appeal is by Howard B. Burdeau, a non-tenured assistant professor at California State College, San Bernardino, from an opinion and order of the District Court dismissing without leave to amend the action he had filed resisting the failure of the school to rehire him.

Appellant was a probationary assistant professor with a one-year appointment for the 1970–71 academic year. That was his first year of employment. Appellant would not have been eligible for tenure until the passage of four years of service with successive annual reappointments. On February 19, 1971, appellant was informed by appellee, John M. Pfau, President of the College, that he would not be reemployed. The letter gave no reason for the action.[1]

Pursuant to California statute (California Education Code § 24201), the Trustees have the power to provide by rule for the government of their appointees and employees, including reappointment of non-tenured academic employees. California State College, San Bernardino, has formulated procedures which include a consultative process for rehiring of professors. In accord with this process President Pfau obtained the evaluations and recommendations of the

1. "Mr. Howard B. Burdeau
711 Brookside Avenue
Redlands, California 92372
"Dear Mr. Burdeau:
"It is with sincere regret that I must inform you that you will not be reappointed to the faculty for the coming academic year (1971–72).

"Consequently, your employment at the California State College, San Bernardino will terminate at the end of the 1970–71 academic year.

"Sincerely,
/s/ John M. Pfau
John M. Pfau
President"

Division of Social Sciences Committee on Retention, · Promotion and Tenure: from the College-wide Committee of Retention, Promotion and Tenure; and, from the Vice President for Academic Affairs. Individuals participating were to evaluate and base their recommendations upon teaching, professionally recognized research and creative activity, and college service. All three recommendations were considered by President Pfau in his decision.[2]

Appellant availed himself of existing grievance procedures, and a hearing was held upon his grievance. At that hearing appellant declined to proceed unless and until he was first furnished the evidence that the several committees or President Pfau had relied upon in making their determinations, or until he had been given access to his personnel file. "Professor White kept insisting that affiant outline for the Committee what evidence had been ignored, and affiant [Burdeau] just as persistently replied that this was impossible since he was unaware of what evidence had been considered." With the matter in a standoff, appellant withdrew and filed this action without presenting any evidence or making any statement.

Appellant in his complaint before the District Court claimed a denial of his fourteenth amendment due process rights. He alleged:

"That nowhere in the applicable California statutes, rules of Defendant Trustees, or California State College, San Bernardino consultative process is there any requirement that the President of the College, or the Committees and individuals making recommendations to him, inform the affected academic employee of the reasons for a negative decision or negative advisory recommendation, nor do said statutes, rules and consultative process require that the matters considered before making these decisions and recommendations be revealed to the affected academic employee." C.T. at 3, 4.

In addition, he asserted "that the reason for the decision not to reappoint plaintiff was to retaliate against him for his expressed opposition to policies and practices within his department and his utilization of the grievance procedure." He also alleged that the refusal to give reasons for his rehiring was a violation of the fifth amendment.

The District Court after the decisions of the Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and our decision in Toney v. Reagan, 467 F. 2d 953 (9th Cir. 1972), held that Burdeau's action in failing to complete the administrative hearing constituted a failure to exhaust adequate state administrative procedures and precluded him from maintaining a Civil Rights action.[3] The action was dismissed without leave to amend.

Appearing in propria persona before this Court, appellant stated in his opening brief the questions presented by his appeal as follows:

"1. Whether under the Fourteenth Amendment and 42 U.S.C. 1983, an individual had rights of due process and equal protection in California State College dismissal actions.

---

2. In an affidavit in opposition to a motion to dismiss, filed in the District Court, appellant states: "In a deposition taken of President Pfau on November 2, 1971, in connection with this case, President Pfau testified that the Division of Social Sciences Committee on Retention, Promotion and Tenure recommended against affiant's reappointment for the 1971–72 academic year as did the College-wide Committee on Retention, Promotion and Tenure." The deposition was not made a part of the record on appeal.

3. Because Mr. Burdeau has acted as his own attorney in this court, and because his briefs and argument were directed primarily to the merits, we will assume for the purpose of deciding this case that Mr. Burdeau has satisfied the exhaustion requirements of Toney v. Reagan, 467 F.2d 953, 956 (9th Cir. 1972), even though his conduct before the Executive Order 112 panel may not have been conducive to meaningful ajudication.

"2. Whether the recent *Roth*, (408 U.S. 564, [92 S.Ct. 2701, 33 L.Ed.2d 548], 1972), or *Sindermann*, (408 U.S. 593 [92 S.Ct. 2694, 33 L.Ed.2d 570] 1972), cases removed Federal jurisdictional protection from employment."

No question is raised on appeal as to first amendment rights, and that frequently discussed problem is not argued in the briefs of either of the parties. We do not consider it here.[4]

■ Appellant equates President Pfau's letter not to reemploy as a "firing." To quote further from appellant's opening brief:

"The plaintiff contends that a 'no-reason' firing does, in fact, denote an implied reason because it is subject to interpretation by third parties. Furthermore, it does not give the fired employee any protection for the employer can at a later date make any statement as to the nature of the firing to the serious injury of the 'fired' employee."

A non-tenured professor, as was Burdeau, who is employed on an annual basis is not "fired" simply because his contract is not renewed—neither expressly nor by implication. *See* Board of Regents v. Roth, 408 U.S. 564, 573–574, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The notice of non-renewal, *supra* n.1, was delivered to appellant well in advance of the time required by rule for such notice. It was not couched in terms derogatory of appellant's character or performance or even faintly critical of his ability. It was much as stated in Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972):

"The State, in declining to rehire the respondent, did not make any charge against him that might seri-

ously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' Wisconsin v. Constantineau, 400 U.S. 433, 437 [91 S.Ct. 507, 510, 27 L.Ed.2d 515]. . . . In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake.

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case. For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury . . . .' Joint Anti-Fascist Refugee Committee v. McGrath, *supra*, [341 U.S. 123,] at 185, [71 S.Ct. 624, at 655, 95 L.Ed. 817] (Jackson, J., concurring)." (Citations & footnotes omitted).

■ Appellant's assumption that a "no reason" non-retention is subject to derogatory interpretation by third parties is an assumption not supported by any fact.

4. The procedural record is in considerable disarray. The opinion of the District Court states that at a hearing before the court the plaintiff (appellant) abandoned his contention that a failure to provide a specification of reasons for his non-retention constituted a deprivation of procedural due process.

The record of that hearing was not designated as a part of the record on appeal and we do not have it before us. We treat appellant's cause on appeal on the basis of the issues raised in his brief to which response was made by appellee.

" . . . Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.' " 408 U.S. at 574 n. 13, 92 S.Ct. at 2707.

The appellant's reliance upon the fourteenth amendment's due process provision to afford relief does not assist him upon this record. He has been deprived of neither "liberty" or "property" as those terms are stated in the Constitution and have thus far been interpreted by the Court. Granted that appellant's "liberty" might be impinged had there been a wrongful dismissal during his one-year employment period, such was not this case. We have already shown that there was nothing said to him, of him or remotely concerning him which was of a depreciatory character in the notice given that he was not to be reemployed. As *Roth*, teaches us, "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." 408 U.S. at 575, 92 S.Ct. at 2708.

Nor does he have an interest in "property" on this record which affords constitutional protection to him. His personal hope or even expectation of reemployment or his sincere belief in his own qualifications gives him no claim to the job for an ensuing year. Appellant has pointed to nothing in the statutes, or in the State-wide rules, or in the regulations of the particular institution which state that if he meets certain standards his reemployment is guaranteed. Until tenure is obtained he may equal or exceed minimum requirements for evaluation and still the school may prefer to employ someone else for the position he seeks. *Roth, supra,* at 577, 92 S.Ct. 2701.

Appellant argues, however, that he was not given a formal hearing on nonretention and that one was required under existing rules and therefore he was denied due process. There are two sets of rules which were in effect at State College of San Bernardino during appellant's stay. One set of rules consists of those formulated by this particular college and covers the "consultative process" whereby tenured faculty members make recommendations to the President upon retention, promotion and tenure. From the record and examination of other cases,[5] these rules may vary in some respects from college to college. The second set of rules is set out in Executive Order 112. The appellant filed a "formal request for grievance hearing pursuant to Executive Order Number 112" promulgated by the Office of the Chancellor for all California State Colleges, which provided the grievance procedure by which one aggrieved submits his complaint for grievance committee review. In this request he listed two claims. The first was that the decision not to reappoint him "indicates that prior committees . . . departed from required procedures in a manner that was substantially prejudicial to the grievant." The document then expanded the grievance by reference to the committees on retention, promotion and tenure and outlined affirmatively Professor Burdeau's accomplishments during the academic year and asked that the committee examine them. In his second claim he complained of the college policy of keeping personnel files secret which he asserts is bad policy and contrary to that of the "open file" policy of some of the other state colleges.

At the hearing he insisted on the production of his own personnel file and a statement of reasons for his non-retention. When the chairman of the committee called upon Burdeau to proceed with the presentation of his grievance the response was that he would have to

5. Jablon v. Trustees of California State Colleges, 482 F.2d 997 (9th Cir. 1973); Toney v. Reagan, 467 F.2d 953 (9th Cir. 1972).

have his personnel file and the several committee recommendations before he could detail the reasons they were wrong. A stand-off ensued and appellant left.

In Toney v. Reagan, 467 F.2d at 959, we discussed the problem of a grievant who was faced with the task of attacking a decision without knowing the reasons upon which the decision was predicated. A resolution of the problem was unnecessary there because the grievant had informally obtained the information prior to the hearing. Here, the grievant had no information from the committees or their files as to their recommendations or findings.

But he was entitled to none. The Faculty Rules on Procedures for Retention, Promotion and Tenure provided that "[a]ll proceedings, conversations, and minutes relevant to the official business of committees on retention, promotion and tenure are confidential . . . .", 2.10 Retention, Promotion and Tenure: Criteria and Procedures I D. The state statutes and the rules of the Trustees likewise make no provision for disclosure. As the moving party to the grievance the burden is upon the grievant to produce the evidence to support his charges.[6] Where the state rules and the faculty rules do not provide a grievant with material from the files of the committees he may not by filing his grievance turn the proceeding into a fishing expedition for information he was not otherwise entitled to obtain. And there is no assurance that it would have been helpful had it been obtained. The grievance procedures presuppose that the grievant will have evidence to support his position. Appellant was aware of the fact that the policies of the faculty and the Trustees made no provision for disclosure of the information in their own files. From a constitutional basis to require such a disclosure at the

demand of the non-tenured teacher on the basis of a due process claim is to turn Board of Regents v. Roth, *supra,* upside down.

The judgment of the District Court is affirmed.

---

6. Executive Order No. 112 provides as follows:

"10.9 At the hearing, the grievant shall present his evidence, following which other evidence shall be received. The grievant shall have the burden of persuasion."