Robert FRUMKIN, Plaintiff-Appellant,

v.

BOARD OF TRUSTEES, KENT STATE UNIVERSITY, et al., Defendants-Appellees.

No. 78-3129.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1980.

Decided July 18, 1980.

Eugene Sidney Bayer, Roy M. Kaufman, Cleveland, Ohio, for plaintiff-appellant.

Stephen T. Parisi, Burke, Haber & Berick, Anthony J. DiVenere, Cleveland, Ohio, John R. Climaco, Climaco, Goldberg, Boukalik & Seminatore Co., L. P. A., Cleveland, Ohio, (Kent State) Thomas L. Colaluca, Cleveland, Ohio, for defendants-appellees.

Before MERRITT, MARTIN and JONES, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case is a result of plaintiff-appellant Robert Frumkin's dismissal from the faculty of Kent State University on July 17, 1975. Dr. Frumkin was a tenured Associate Professor of Special Education in a program funded by the United States Department of Health, Education and Welfare. By letter of March, 1973, the Dean of the College of Education informed Frumkin that a possible loss of federal funding would result in termination of Frumkin's employment.

Funding for the program was in fact curtailed; consequently, the College of Education was forced to reduce the number of faculty positions in Frumkin's classification from 3 to 2. A committee composed of the Dean and three department members, including Frumkin, agreed that this selection decision should be based on criteria of training, experience, skills and performance. On August 27, 1974, department members voted to release Frumkin if additional funds continued to be unavailable. This decision, reached pursuant to guidelines Frumkin helped to formulate, was transmitted to the Dean of the College of Education.

On March 12, 1975, in a proceeding unrelated to the University budget, the department issued a document entitled "Recommendation and Rationale for Dismissal of Dr. Robert Frumkin." In support of its recommendation that Frumkin be terminated, the report listed the following reasons: unsatisfactory performance as Grant Director, recurring unproven charges against faculty members, unprofessional conduct, false charges against the Department, and violation of University policy. The University President decided that this report stated a prima facie case against Frumkin's continued employment. Frumkin elected to dispute the department's judgment, and a hearing was scheduled as required by the University's "Academic Policy Book."

Frumkin requested, and was granted, the right to legal representation at the hearing; his attorney's role, however, was restricted to consulting with and advising his client. The University expressed a desire to avoid a full-blown adversary proceeding and denied requests by Frumkin's lawyer to cross-examine witnesses, conduct direct examination, and make objections to testimony. Counsel did present Frumkin's closing argument and summation to the Hearing Committee.

Between May 31, 1975 and June 12, 1975, the Hearing Committee met 9 times and heard the testimony of 16 witnesses, 10 of whom Frumkin had asked the Committee to call on his behalf. On June 16, 1975, the Committee determined by a vote of 4–1 that there was evidence to justify Frumkin's dismissal, but recommended 3–2 against termination. A month later, at a meeting of the Board of Trustees, the University President recommended that Frumkin be dismissed. Frumkin and his attorney were both permitted to argue against the President's resolution. After deliberation, the Board of Trustees voted 5–2 to terminate Frumkin's employment.

In December, 1975, Frumkin filed suit in District Court, naming as defendants the Kent State Board of Trustees, four individual Trustees, and the University President. The issue presented below, and argued to us on appeal, is whether the University's refusal to allow Frumkin's lawyer to conduct direct and cross-examination at the hearing constituted a denial of Fourteenth Amendment due process. The trial court found that the pretermination hearing, as conducted, satisfied the applicable requirements of procedural due process. We agree.

■ We note at the outset that the trial court evaluated Dr. Frumkin's argument in light of the correct legal standard. The criteria which determine the parameters of procedural due process are set out in *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The Supreme Court has consistently rejected a concept of due process which would afford all complaining parties, whatever the context of the dispute, an inflexible "checklist" of legal rights. On the contrary, procedural due process issues, originating as they may in diverse situations, demand a more sensitive judicial approach. Thus, we find in *Mathews, supra,* an analysis designed to balance competing interests in lieu of imposing rigid legal formulae. *See also Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); and *Arnett v. Kennedy,* 416 U.S. 134, 167–8, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974).

■ Our threshold inquiry is whether Dr. Frumkin has a substantial private interest at stake. The trial court held, correctly, that he does have. Even though his continued employment in a particular program was contingent on federal funding, Dr. Frumkin's tenured status constitutes a property interest terminable only in accordance with due process of law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ The narrow issue is, therefore, whether procedural due process required the University to permit Dr. Frumkin's retained counsel to conduct direct and cross-examination of witnesses at the pretermination hearing. The second *Mathews* criterion requires us to assess the "risk of erroneous deprivation" and the "value of the additional procedural safeguards" at issue. Under certain circumstances, the active participation of a legal representative is likely to mitigate an otherwise considerable risk of "erroneous deprivation." The Supreme Court has, for example, recognized the potential importance of counsel's role in welfare benefits pretermination hearings, *see Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); and in criminal trials, especially where overreaching might occur, *see Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). We cannot, however, accept appellant's contention that we should rule in his favor on the basis of an analogy between the problems which beset an unrepresented welfare recipient confronted with an administrative court and the position of a professional academic who, under the direction of his attorney, presents his case to a panel of fellow faculty members. As the *Mathews* court noted:

> [T]he judicial model of an evidentiary hearing is neither a required, nor even the most effective method of decision making in all circumstances . . .
> All that is necessary is that the procedures be tailored, in light of the decision to be made, to the "capacities and circumstances of those who are to be heard" [citation omitted] to insure that they are given a meaningful opportunity to present their case.

*Id.* 424 U.S. at 348, 96 S.Ct. at 909. *See also Toney v. Reagan,* 467 F.2d 953, 958 (9th Cir. 1972).

We believe that Dr. Frumkin had ample opportunity to present his case to the Hearing Committee in a manner calculated to achieve a fair result. Indeed, despite his emotional behavior during the proceedings, the record shows that he was in fact successful in convincing a majority of the panel to recommend against his dismissal. In

light of the outcome of the hearing, it is difficult to discern how an expansion of counsel's role would have been of significant benefit to appellant. There is no indication that Dr. Frumkin's lawyer would, or could, have introduced evidence more enlightening than the testimony elicited by Dr. Frumkin himself under his attorney's guidance. *Cf. Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 369 (9th Cir. 1976).

The third guideline set out in *Mathews* requires an analysis of "the government's interest, *including the function involved*, and the fiscal and administrative burden that the additional . . . procedure would entail." (emphasis added). The administrative burden, in this instance, of permitting appellant's counsel to examine witnesses would have been comparatively slight. However, we are persuaded that the University has a legitimate argument in its expressed reluctance to transform the type of inquiry involved here into a full-fledged adversary trial. Because universities have traditionally been afforded broad discretion in their administration of internal affairs, *see Downing v. LeBritton*, 550 F.2d 689, 692 (1st Cir. 1977), we do not deem it necessary to interfere where, as here, there is no showing that the overall procedure was prejudicial to the rights terminated employee. As the Ninth Circuit noted in *Toney, supra* at 958:

> [W]e can well understand that when intelligent, educated college professors are weighing issues of tenure and faculty qualifications—issues crucial to the integrity of an academic institution—they might prefer to deal with their peers rather than with the bar.

Since we have determined that Dr. Frumkin suffered no curtailment of his constitutional rights at the hands of his colleagues, we decline to force the internal academic affairs of Kent State University into an adversary mold resembling a criminal trial.

The judgment of the District Court is affirmed.

---

* This appeal originally was decided by unreported order on June 16, 1980. See Circuit Rule 35.

NATHANIEL R. JONES, Circuit Judge, concurring.

I agree with the majority's reasoning and result in this case. The majority opinion correctly notes that universities have broad discretion in the administration of their internal affairs. I write separately to make clear that such discretion is not without limits. The court should not defer to the judgment of university administrators when plaintiffs allege some form of discrimination. Where discrimination is alleged, the judicial role must necessarily be more active.