[Civ. No. 22406. Fourth Dist., Div. One. Oct. 9, 1980.]

GRETCHEN MacDONALD, Plaintiff and Appellant, v.
SAN DIEGO STATE UNIVERSITY et al.,
Defendants and Appellants.

COUNSEL

Bernard L. Allamano, and John D. Mickus for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Janelle B. Davis, Deputy Attorney General, for Defendants and Appellants.

OPINION

**COLOGNE, J.**—Both sides appeal the superior court's judgment under Code of Civil Procedure section 1280 et seq. correcting and confirming an arbitration award. Essentially the judgment deletes from the arbitration award any monetary sum and otherwise confirms the award in its entirety.

Between 1970 and 1975, Gretchen MacDonald (then Gretchen Crafts, Ph.D.) held the position of acting director of the study skills center at San Diego State University (SDSU). A search committee looking for a permanent director of the center considered some 150 applications from across the nation, had five on-campus interviews and recommended three persons for the directorship to the dean. MacDonald, one of the three finalists, was not recommended by the dean to the SDSU president who appointed someone else.

MacDonald filed a grievance and a faculty hearing (grievance) committee was formed in accordance with Education Code section 89542.5 and Executive Order No. 240 of the California State University and Colleges Chancellor.[1] The committee heard 54 hours of testimony and considered numerous documents before submitting its recommendation to the SDSU president on December 6, 1977. By January 5, 1978, the SDSU president had filed his rejection of one of the grievance committee's recommendations, his agreement with some and his modification of others.

---

[1]Education Code section 89542.5 provides, in part: "The Trustees of the California State University and Colleges shall establish grievance and disciplinary action procedures for all academic employees, including all temporary employees who have been employed for more than one semester or quarter, whereby:

"(a) Grievances and disciplinary actions shall be heard by a faculty hearing committee composed of full-time faculty members, selected by lot from a panel elected by the

The arbitrator's findings and conclusions summarize the parties' positions as follows: "The Grievance Committee's first recommendation was, 'Any negative or anonymous material in the permanent or in any temporary personnel file of Professor Crafts' which is related in any way to the search and appointment process for the SSC Director be removed.' The President replied, 'No information relating in any way to the search and appointment process for the SSC Director should be in any personnel file of Professor Crafts; a search will be made to assure that fact.' The Arbitrator must conclude there is a disagreement here since the Committee recommended only the removal of 'negative or anonymous material' while the President said remove all material which had to do with the search and appointment process for the SSC Director, which could include positive and identified material as well as negative and anonymous material.

"The Committee's second recommendation was, 'Notify the appropriate deans and the SSC faculty that Sections VII, B-1 of the Senate Policy File do apply to the SSC.' The President agreed to this recommendation.

"The Committee's third recommendation was, 'Request the SSC Director to bring to his faculty the recommendation that an Executive Committee be elected annually within the SSC to advise the Director on policy matters in connection with personnel procedures, budgeting, curriculum development, scheduling, etc.' While originally incorrect in his understanding such an Executive Committee did exist, the President corrected his position and accepted this recommendation.

---

campus faculty, which shall make a recommendation to the president of the state university or college.

" . . . . . . . . . . . . . . .

"(d) If there is disagreement between the faculty hearing committee's decision and the university or college president's decision, the matter shall go before an arbitrator whose decision shall be final.

"(e) The costs incurred in arbitration shall be paid by the university or college.

" . . . . . . . . . . . . . . .

"The grievance procedure established pursuant to this section shall be exclusive with respect to any grievance which is not subject to a State Personnel Board hearing. . . .

" . . . . . . . . . . . . . . .

"For purposes of this section, a 'grievance' is an allegation by an employee that he was directly wronged in connection with the rights accruing to his job classification, benefits, working conditions, appointment, reappointment, tenure, promotion, reassignment, or the like. A grievance does not include matters, such as the salary structure, which require legislative action."

"The Committee's fourth recommendation was, 'In future deliberations at the college level concerning either Professor Basile or Professor Crafts, exclude as voting participants all witnesses in this Hearing who do not belong to the SSC faculty.' The President rejected this recommendation as not supported by the evidence, contrary to the President's authority, and in violation of the California Administrative Code.

"The Committee's fifth and last recommendation was, 'After thoroughly reviewing this report, the President should attempt to identify any additional actions which from his perspective would suitably redress the Grievant. Any such actions should then be posed to the Grievant and with and only with her agreement, carried out.' The President took the position, 'I have been unable to identify any such actions.' Such a position would not seem to be in agreement with the principle thrust of the Committee's Recommendations."

On April 4, 1978, the arbitrator found a disagreement existed between the grievance committee and the SDSU president. His award determined the president's disagreement was unjustified. The arbitrator adopted the grievance committee's recommendations which he ordered carried out as rapidly as possible. He retained jurisdiction for 90 days to permit the president to determine additional actions which would suitably redress MacDonald.

On April 20, 1978, MacDonald made written demand of the president requesting numerous actions, including removing negative or anonymous materials from files, making certain personnel and administrative changes, issuing specified apologies and reprimands and paying $304,000. On May 24, the president summarized his position in a letter to the arbitrator, as follows: "In summary, I have therefore accepted Recommendations 1, 2, 3, and 5 of the Grievance Committee but have rejected Recommendation 4 as being contrary to law. I have accepted your finding that the recommendations of the Committee are adopted as yours, but I have rejected your attempts to go beyond your authority to tell the University that the recommendations must 'be carried out as rapidly as possible,' and your attempt to 'retain jurisdiction of this case' in order to determine further redress for the grievant."

On July 3, 1978, the arbitrator issued a supplementary opinion and award, finding the president did not follow the recommendations of the grievance committee as adopted in the April 4 arbitration decision. He also found demands by MacDonald after the April 4 award, including a

request for $304,000, and the position of the president, "that he will do little or nothing when, as, and if he gets around to it and no one is going to tell him what to do" as both totally contrary to the purpose and procedures of Executive Order No. 240.

The arbitrator rejected the president's objections to the first award's direction he carry out the grievance committee's recommendations "as rapidly as possible" and its retention of jurisdiction for 90 days, citing as reasons the need to avoid delay, the further agreement requirements of recommendation five that additional actions for suitable redress be taken by the president and the president's attitude which "convinced the Arbitrator the will of the Grievance Committee might well not be followed in a fair and reasonable manner by the President." He modified recommendation four, relating to voting members of committees concerning MacDonald and the new director, to merely require the president to make every reasonable effort to convince any witnesses who are not study skills center faculty members to be excluded as voting members, rather than absolutely banning voting by any such nonfaculty witnesses. Otherwise, he ordered the original April 4 recommendations carried out within 30 days and awarded MacDonald $5,000 in "compensatory damages and legal fees." He further ordered mutual cooperation between MacDonald and the new study skills center director as well as a member of his staff.

On February 27, 1979, MacDonald filed the petition to confirm the award of the arbitrator, resulting in the judgment which both sides now appeal.

### University's Appeal

Due to the jurisdictional nature of the contentions, we consider first the issues raised by SDSU, its President Thomas B. Day, the California State University and Colleges and its Chancellor Glenn S. Dumke, all of whom we refer to for convenience as SDSU.

■ SDSU asserts MacDonald was not entitled to proceed with the grievance procedures since, as acting director of the study skills center, she was not an "academic employee" to whom the provisions of Education Code section 89542.5 and Executive Order No. 240 apply. Although there was some discussion of jurisdiction in the points and authorities and in the hearing in the superior court, this particular aspect of alleged jurisdictional defect is not clearly shown by the record to

have been raised until this appeal. Nevertheless, since the question relates to subject matter jurisdiction which may be raised initially on appeal, we consider its merits (see *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; *Keithley* v. *Civil Service Bd.* (1970) 11 Cal.App.3d 443, 448 [89 Cal.Rptr. 809]).

It is true the grievance procedure which the Trustees of the California State University and Colleges (Trustees) are required by Education Code section 89542.5 to establish relates only to academic employees (see *Cohen* v. *Board of Trustees* (1979) 97 Cal.App.3d 541, 544-545 [158 Cal.Rptr. 814]). So too do the provisions of Executive Order No. 240 permit grievances only with respect to academic status.[2] The problem is we cannot tell from the record with any certainty whether the grievance here pertains to a position other than an academic assignment. No material in the record informs us of the nature of the study skills center and the role of its director. We note in this regard other campuses of the State University and Colleges system give heads of departments, deemed not to be academic positions, the title of department chairman (see *Cohen* v. *Board of Trustees, supra*, 97 Cal.App.3d 541, 543; see also *Zumwalt* v. *Trustees of Cal. State Colleges* (1973) 33 Cal.App.3d 665, 673 [109 Cal.Rptr. 344]). Whether there is a distinction between a director and a department chairman for purposes of determining that a particular assignment is or is not "academic" is immaterial, for we can resolve the issue even if it is not academic. Under this assumption, SDSU was not required to apply the Education Code section 89542.5 and Executive Order No. 240 grievance procedures, but it elected to follow that procedure. The question thus presented is whether SDSU is authorized to do so?

We conclude there was sufficient authority over matters of faculty appointment, retention and promotion in the Trustees and in the president of San Diego State to permit SDSU to enter into and perform an agreement to arbitrate a grievance in the manner accomplished in this case. We view what occurred up through the July 3, 1978, award of the arbitrator as full performance of an agreement between SDSU and MacDonald to submit her grievance to arbitration in accordance with Executive Order No. 240 and Education Code section 89542.5.

---

[2]Section 2.4 of Executive Order No. 240 provides: "Academic employee" includes an academic employee in an academic-administrative assignment insofar as the grievance pertains to academic status, but not insofar as the grievance pertains to academic-administrative assignment.

By legislative enactment, the Trustees are the "employer" of SDSU personnel (Ed. Code, § 66609)[3] and, as such, have broad authority over the government of SDSU appointees and employees. The Trustees are required to adopt rules and regulations not inconsistent with law for the government of their appointees and employees (Ed. Code, §§ 89030, subd. (b), 89500). By majority vote, the Trustees may adopt a rule delegating any power vested in them by the Education Code to any officer, employee or committee they may designate (Ed. Code, § 89035). Moreover, they may enter into agreements with any person for the performance of acts (Ed. Code, § 89036).

Pursuant to this statutory authority, the Trustees have adopted rules delegating to the president of a campus, or his designee, the power to appoint academic, administrative and nonacademic employees (Cal. Admin. Code, tit. 5, § 42702, subds. (d) and (i)). In addition, section 42701 of title 5 provides, in part: "It is the policy of the Trustees that faculty be consulted on academic personnel matters. Each campus shall develop campus-wide procedures whereby only members of the faculty who are tenured, and such department chairmen and academic administrators as the campus procedures shall provide, may participate at any level of consideration in the deliberations or vote on recommendations relating to appointment, retention, tenure or promotion of faculty. The procedures shall provide that those making such recommendations should consider information from other faculty members and any other source, including, but not limited to students.

"The campus-wide procedures shall be consonant with the regulations, policies and procedures of the Board of Trustees and the Chancellor and shall be approved by the president."

The reference to "appointment, retention...of *faculty*" (italics added) makes this provision broad enough to include administrative or academic-administrative positions as well as academic positions.[4] We

---

[3]In pertinent part, Education Code section 66609 provides: "All state employees employed on June 30, 1961, in carrying out functions transferred to the Trustees of California State University and Colleges by this chapter, except persons employed by the Director of Education in the Division of State Colleges and Teacher Education of the Department of Education, are transferred to the California State University and Colleges.

"...All academic and administrative positions filled by the trustees on and after July 1, 1961, shall be filled by appointment made solely at the discretion of the trustees."

[4]Webster's Third New International Dictionary includes within its definition of "faculty" the following: "...a branch of learning...the teaching staff and those members of the administrative staff having academic rank in a college."

read this section as authorizing use of the procedure followed in Mac-Donald's case for resolving a grievance about appointment or retention of a member of the faculty in an administrative or academic-administrative position. The campus president, grievance committee and arbitrator were authorized to act as they did in MacDonald's case. There was no absence of subject matter jurisdiction in the campus procedure used here, that is, submitting MacDonald's case to the grievance committee and to arbitration, in the words of the arbitrator, "in accordance with Executive Order No. 240." The whole procedure used on campus amounts to performance of an agreement to resolve MacDonald's grievance using the procedure leading to arbitration as spelled out in the executive order.

The subject matter jurisdiction contention of SDSU thus fails.

 SDSU next contends the "arbitration" specified in the university's grievance procedures is not an arbitration as defined in Code of Civil Procedure section 1280 et seq., and thus is not entitled to confirmation. SDSU reaches this conclusion by examining certain differences between the general provisions of the Code of Civil Procedure relating to the conduct of arbitration proceedings (Code Civ. Proc., § 1282 et seq.) and the Executive Order No. 240 method of arbitration. Perhaps most notable among the differences is the fact the arbitrator under the executive order is precluded from having a hearing and in reaching decision may consider only the report of the grievance committee, the written decision of the president, the written arguments received in connection with the arbitration, the materials the committee considered and, if desired, the recording of the grievance committee hearing (Exec. Order No. 240, §§ 15.2, 15.3). By comparison, the Code of Civil Procedure provisions contemplate an evidentiary hearing before the arbitrator by permitting counsel, subpoenaed witnesses and documents, sworn testimony and cross-examination (Code Civ. Proc., §§ 1282.4-1282.8). Under the code, however, much of the procedure is subject to the agreement of the parties (Code Civ. Proc., §§ 1282, 1282.2).[5]

The ability of the parties to fashion their own arbitration agreement convinces us there is no legal impediment to judicial confirmation of the

[5]Code of Civil Procedure sections 1282 and 1282.2 commence with the following language deferring to the parties' agreement on procedure: "Unless the arbitration agreement otherwise provides, or unless the parties to the arbitration otherwise provide by an agreement which is not contrary to the arbitration agreement as made or as modified by all the parties thereto:..."

award as was done here under Code of Civil Procedure section 1285 et seq. Given the strong public policy in California favoring peaceful resolution of employment disputes by means of arbitration and the requirement we indulge in every intendment to give effect to such proceedings (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261]), and particularly considering the Legislature's use of the commonly understood words "arbitrator" and "arbitration" in Education Code section 89542.5, it was fully appropriate to use the Code of Civil Procedure provisions for confirmation of the award as was done here.

We note in this regard there is no merit to SDSU's argument the Education Code section 89542.5 language speaking of an exclusive remedy and stating the arbitrator's decision "shall be final" precludes court confirmation of the award. ■ It is the rule: "When an agreement provides for the determination by a third person or persons of some proper matter to be settled and that the decision shall be final, a submission to and determination by him or them of the matter is binding on the parties. That is true whether the arrangement is technically a common law or statutory arbitration or something akin thereto. [Citations.]" (*Silva* v. *Mercier* (1949) 33 Cal.2d 704, 708 [204 P.2d 609].)

■ Generally it is necessary that arbitration clauses describe the arbitrator's decision as final. The presence of such a clause facilitates confirmation, for courts have power to enforce awards only if the award is final and binding on the parties (see *International Brotherhood of Electrical Workers* v. *Silva* (1979) 96 Cal.App.3d 751, 759 [158 Cal. Rptr. 78]).

Moreover, SDSU's argument the Education Code arbitration provision does not constitute a "written agreement" to arbitrate as contemplated by the Code of Civil Procedure sections cannot be sustained since SDSU participated fully with MacDonald in the Education Code-Executive Order arbitration process and, with her, stands in the same position as one having fully performed a contract to arbitrate in this manner. Standing in this position, SDSU is bound by the arbitration procedure (see *Sanserino* v. *Shamberger* (1966) 245 Cal.App.2d 630, 633-634 [54 Cal.Rptr. 206]).

SDSU last contends the arbitrator's decision is not enforceable because he exceeded the scope of his duties under the grievance procedures. SDSU points out Executive Order No. 240, section 15.7,

provides only three options to the arbitrator once he finds a disagreement exists between the grievance committee's recommendations and the president's decision. The arbitrator may adopt the president's decision or the grievance committee's recommendation or he may direct a rehearing by the grievance committee. Here, SDSU asserts, the arbitrator exceeded his authority because he retained jurisdiction for 90 days, contrary to procedures requiring a decision within 30 days (Exec. Order No. 240);[6] modified a recommendation of the grievance committee by placing a time limit on the period the recommendation must be carried out; directed the president to take illegal action pertaining to excluding certain witnesses as voting participants in future deliberations concerning MacDonald or the new director; and ordered the university to pay MacDonald the sum of $5,000 in compensatory damages and legal fees.

We observe first the arbitrator did adopt the grievance committee's recommendation and thus complied literally with the statute.

■ In the circumstances of this case, moreover, the retained jurisdiction and time limit for compliance aspects of the award were in the nature of necessary incidents to the effective exercise of the arbitrator's function and duties. The record shows the president's attitude combined with the necessity of continuing negotiations for further redress to create a need for ongoing jurisdiction and time limits. These aspects of the award were fully within the arbitrator's power and justified by the circumstances.

SDSU improperly reads the award pertaining to voting members of committees deliberating on MacDonald's status, for the award is clear in its language "to be carried out as explained above" and, from that explanation, in its intent not to contravene the dictate of Education Code section 89542.5, subdivision (a) that grievance committee members shall be "selected by lot from a panel elected by the campus faculty." This portion of the award comports with law.

■ Finally, on SDSU's challenge to the arbitrator's authority, Education Code section 89542.5, subdivision (e), permits the arbitrator to award "costs incurred in arbitration" against the university or college.

---

[6]Executive Order No. 240, section 15.8, reads: "Within 30 calendar days of receipt of the materials pursuant to Section 14.5, the arbitrator shall mail to the Executive Officer a report of decision which shall include reasons for that decision. At the same time the arbitrator shall return all materials submitted. The Executive Officer shall furnish a copy of the decision to the President and to the grievant."

Thus, monetary awards are permitted. Here SDSU had notice in advance of the arbitration proceeding leading to the July 3, 1978, order that MacDonald sought money damages in accordance with the grievance committee's recommendation five which required additional actions by SDSU for suitable redress of MacDonald. In this context, we hold the monetary award was within the arbitrator's authority.

## MacDonald's Appeal

■ MacDonald contends the trial court was without jurisdiction to correct the arbitrator's award because, first, SDSU did not file a response requesting the award be corrected or vacated, and, second, the response SDSU did file was untimely and no good cause existed for relief from default. MacDonald's petition to confirm the April 4 and July 3, 1978, arbitration award was filed February 27, 1979. On October 17, 1979, SDSU filed its response. The response admitted all but one of the petition's allegations, denying an allegation the award was made in accordance with the terms of a written agreement, and it prayed the petition be denied and the action dismissed as improvidently filed under Code of Civil Procedure section 1280 et seq.

Code of Civil Procedure sections 1286.8 and 1288.2 provide as follows: "1286.8. The court may not correct an award unless:

"(a) A petition or response requesting that the award be corrected has been duly served and filed; or

"(b) A petition or response requesting that the award be vacated has been duly served and filed and;

"(1) All petitioners and respondents are before the court; or

"(2) All petitioners and respondents have been given reasonable notice that the court will be requested at the hearing to correct the award or that the court on its own motion has determined to correct the award and all petitioners and respondents have been given an opportunity to show why the award should not be corrected."

"1288.2. A response requesting that an award be vacated or that an award be corrected shall be served and filed not later than 100 days after the date of service of a signed copy of the award upon:

"(a) The respondent if he was a party to the arbitration; or

"(b) The respondent's representative if the respondent was not a party to the arbitration."

Considering section 1286.8 and the facts before us, it is quite clear there was no request for correction as contemplated by subdivision (a). Under the alternative of subdivision (b) however, viewing SDSU's response liberally (see Code Civ. Proc., § 452), the prayer for dismissal may be deemed to be the equivalent of a request the award be vacated. There is no question all parties were before the court as contemplated in paragraph (1) of subdivision (b). Accordingly, section 1286.8 does not necessarily represent a bar to correction of the award as MacDonald suggests (but see *Davis* v. *Calaway* (1975), 48 Cal.App.3d 309, 311 [121 Cal.Rptr. 570], not allowing a request to dismiss to circumvent time limit for request to vacate or correct).

Section 1288.2, on the other hand, does prevent correction of the arbitration award. SDSU stands in the same legal position as Calaway in *Davis* v. *Calaway, supra*, 48 Cal.App.3d 309, as described at page 311, where the court says: "...Calaway did not timely challenge the arbitration award in the superior court. Copies of the arbitration award were transmitted to the parties on 11 December 1972. Davis filed his petition for confirmation of the award on 9 May 1973. Calaway responded on 17 May 1973 with his objections to the award. Code of Civil Procedure section 1288.2 provides that 'a response requesting that an award be vacated or that an award be corrected shall be served and filed not later than 100 days after the date of service of a signed copy of the award...' Calaway filed his response two months past the 100-day limitation of section 1288.2. (*Coordinated Construction Inc.* v. *Canoga Big 'A,' Inc.*, 238 Cal.App.2d 313, 316....)

"...Calaway sought no relief in the trial court from his default on the 100-day limitation of section 1288.2, and he offers no excuse on this appeal which would justify his failure to comply with the mandate of that section. (See *DeMello* v. *Souza*, 36 Cal.App.3d 79, 84-86....) The pattern of the arbitration statute is clear: *a discontented party to an arbitration proceeding must file objections to the award, either by his own petition to vacate or correct or by response to a petition to confirm, within 100 days of service of the award.* [Citations.] *A request to dismiss* the proceeding (see Code Civ. Proc., §§ 1285.2 and 1287.2)

*may not be used in unjustified circumvention of the prescribed time limit on a request to vacate or correct an award.*" (Italics added.)

While the record does not disclose the exact date SDSU was served with a signed copy of the award, the petition to confirm the award contained a copy and the response filed by SDSU admitted it received that document. SDSU does not otherwise dispute the fact of proper service of the award, saying, by way of admission, "failure to file a timely response does not divest the court of jurisdiction to rule on the validity of the arbitrator's award," and focusing its response solely on the asserted invalidity of the award. We can assume in any case SDSU had a copy on or about February 27 when the petition was filed with the court.

SDSU's response came 232 days after the petition to confirm the award was filed, far too late for proper consideration. As in *Davis*, no effort was made to seek relief from the 100-day limitation, nor does SDSU attempt to do so at this time. The response, therefore, cannot be given effect as a petition to correct the award. The $5,000 award to MacDonald must stand.

The judgment is reversed insofar as it deletes the $5,000 award to MacDonald (that is, "paragraph 2 of the Supplementary Awarded [*sic*] dated July 3, 1978") and the trial court is instructed to confirm the arbitration award of April 4, and July 3, 1978, in its entirety. In all other respects, the judgment is affirmed and MacDonald is entitled to costs.

Brown, (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied October 27, 1980, and the petition of defendants and appellants for a hearing by the Supreme Court was denied December 24, 1980.