[Civ. No. 22411. Third Dist. Dec. 15, 1983.]

MAKRAM K. SAMAAN, Plaintiff and Appellant, v.
TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY AND
COLLEGES et al., Defendants and Respondents.

**COUNSEL**

Turner & Sullivan, Richard K. Turner and Mary A. O'Gara for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Talmadge R. Jones, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**SPARKS, J.**—Appellant Makram K. Samaan appeals from a judgment of the Superior Court of Sacramento County which upheld his dismissal as a

tenured professor at California State University at Sacramento. Appellant contends: (1) the trial court erred in determining that his proper remedy was a petition to set aside an arbitrator's award under Code of Civil Procedure section 1285 et seq., rather than a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5; (2) he was denied procedural and substantive due process; (3) the arbitration did not cure the due process violations; and (4) his dismissal from employment was an abuse of discretion. We reject these contentions and shall affirm the judgment.

FACTS

Appellant studied psychology and educational psychology at the University of Minnesota and earned a doctorate degree from that institution. He has been employed as a professor at California State University at Sacramento (CSUS) since 1970, and is a tenured employee. He also engages in the private practice of psychology and counseling. He holds licenses as a psychologist and as a marriage and family counselor. Appellant's wife, Mary Samaan, is licensed as a marriage and family counselor.

Appellant's difficulties arose out of activities with regard to billing for services under the Medi-Cal program. An investigation into appellant's practice developed evidence of three questionable activities. First, appellant had submitted billing to Medi-Cal for 119 services which his wife rather than he had performed. Appellant's wife does not hold a license which qualifies her to render services compensable under the Medi-Cal program and she is not licensed as a Medi-Cal provider. Appellant signed billing forms for these services in which he attested that he had personally performed the services, although he had not done so. Second, an auditor came to the conclusion that appellant had submitted bills to Medi-Cal for work performed at Serene Homes in excess of the number of hours he had been there. Third, on two different occasions appellant had performed services for Medi-Cal mothers and had submitted billing forms for the mothers and their children, although he had never seen the children. On these occasions appellant had submitted separate billing forms for each of the children involved. He had attested that he personally performed psychotherapeutic services for them, and listed his diagnosis of their problems, although he had not seen the children.

In May 1979 the Attorney General's office filed a 17-count criminal information against appellant and his wife. Ultimately, pursuant to a plea bargain, appellant entered a plea of guilty to one count of grand theft in violation of Penal Code section 487, subdivision 1, in return for dismissal

of the charges against his wife and dismissal of all other charges against himself. Appellant was placed on probation for three years with conditions including the reimbursement of the Medi-Cal program of $5,431.50, payment of a fine of $1,000 plus penalty assessment, and that he perform 120 hours of community service.[1]

When CSUS President Lloyd Johns learned of the conviction of appellant he invoked Executive Order 245, the interim disciplinary procedure for academic personnel for California State Universities and Colleges. Pursuant to Executive Order 245, Austin Gerber, Dean of the School of Business and Public Administration, was appointed as administrative officer with the duty of conducting a factfinding investigation and making a recommendation of further action to the president. Appellant responded to the investigation in writing through his attorney. After receiving Gerber's report, President Johns determined to proceed with a disciplinary action.

Education Code section 89535 provides that immoral conduct, unprofessional conduct, dishonesty, and conviction of a felony or of a misdemeanor involving moral turpitude are grounds for dismissal, demotion or suspension. Education Code section 89538 provides in relevant part: "Notice of dismissal, demotion, or suspension for cause of an employee shall be in writing, signed by the chancellor or his designee and be served on the employee, setting forth a statement of causes, the events or transactions upon which the causes are based, the nature of the penalty and the effective date,'and a statement of the employee's right to answer within 20 days and request a hearing before the State Personnel Board." Education Code section 89539 provides that in the event the employee shall request a hearing before the State Personnel Board the hearing shall be conducted in the same manner as state civil service proceedings and the party taking the disciplinary action shall have the burden of proof.

Although an employee being disciplined for cause has the right to a hearing before the State Personnel Board, there is an optional procedure which the employee may elect. Pursuant to Education Code section 89542.5 the employee may choose to have the action heard by a faculty hearing committee composed of full-time faculty members chosen by lot from a panel elected by the campus faculty, which shall make a recommendation to the

---

[1]Both appellant and his wife entered into stipulated disciplinary actions by their licensing boards by which their licenses were revoked but the revocations were stayed and they were placed on probation.

president of the university or college.[2] If there is disagreement between the committee's decision and the president's decision, then the matter goes before an arbitrator whose decision is final.

The interim disciplinary procedures invoked by President Johns against appellant implement Education Code sections 89535 through 89542.5. Under those procedures the president must determine whether the matter should proceed after receiving the report of the designated administrative officer. At that time the person charged may waive a hearing and accept a recommended sanction without admitting the conduct charged. If the person does not accept the sanction then the matter must proceed to hearing and no cognizance shall be taken of the recommended sanction. If there is to be a hearing then the person charged must elect whether the hearing shall be before the State Personnel Board or a faculty hearing committee. A failure to make a written election constitutes an election of a State Personnel Board hearing. In the event a State Personnel Board hearing is chosen, then the president must make his recommendation to the chancellor and the employee must be served with notice of the sanction and reasons therefor.

Appellant was notified that under presidential authority, the appropriate sanction for his conduct was dismissal from employment. He was informed of the grounds for sanction and the factual basis therefor; that he could accept the sanction without admitting the conduct or could resign; and that if he chose to proceed to a hearing he could elect the type of hearing he desired. Appellant elected to proceed with a faculty committee hearing.

A lengthy hearing was held before a faculty committee. Appellant testified concerning his background, and provided evidence of his educational contributions and services to the community. A number of faculty members and students testified on appellant's behalf. With regard to the charges against him, appellant admitted that he had billed Medi-Cal for his wife's services,

---

[2]Education section 89542.5 directs the trustees of the California State University and Colleges to establish "grievance and disciplinary action procedures for all academic employees" whereby: "(a) Grievances and disciplinary actions shall be heard by a faculty hearing committee composed of full-time faculty members, selected by lot from a panel elected by the campus faculty, which shall make a recommendation to the president of the state university or college. . . . [¶] (d) If there is a disagreement between the faculty hearing committee's decision and the university or college president's decision, the matter shall go before an arbitrator whose decision shall be final." This section further provides: "The grievance procedure established pursuant to this section shall be exclusive with respect to any grievance which is not subject to a State Personnel Board hearing. In the case of a grievance or disciplinary action which is subject to a State Personnel Board hearing, pursuant to Sections 89535 to 89539, inclusive, and Section 89542 the procedures provided for in those sections or those provided for in this section may be utilized. The academic employee shall have the choice of which procedures shall be utilized."

but insisted that he believed it was proper to do so. He admitted that he was a sloppy bookkeeper and may have filed confused bills for his Serene Homes work, but he insisted that he had performed the services for which he billed. He finally admitted that he had billed Medi-Cal for services to the Mizell and Tanner children whom he had not seen, but testified that he formed his diagnosis on the basis of what their parents had told him, and he billed Medi-Cal in anticipation of seeing the children.

The faculty committee submitted a unanimous final report to President Johns. The committee reported that with respect to the Mizell and Tanner children it appeared the "mistake" was the result of casual bookkeeping, accumulation of forms, and the failure of an agreement whereby appellant would later see the children. The committee found "no convincing evidence that there was premeditation or intent to defraud." With regard to the Serene Homes billings the committee acknowledged that appellant had submitted impossible billings (e.g., "twelve fifty-minute sessions in one-half day"), but the committee concluded the errors were the result of unrealistic Medi-Cal billing procedures, and that appellant in fact provided the services for which he billed. With regard to the Medi-Cal billings for services performed by appellant's wife, the committee found that appellant's "mistake" was understandable, and that he submitted the claims in his name because he handled all the billings and the Medi-Cal provider number was issued to his corporation. The committee found no evidence of immoral conduct, unprofessional conduct, or dishonesty. With regard to appellant's felony conviction the committee emphasized "It is important to note that Dr. Samaan was not convicted of a felony, but rather pleaded guilty, a distinction of some significance." The committee recommended that appellant "receive a written reprimand in which he is informed of the importance of regulations and the necessity of seeking and following them in his professional practice." The committee explained that it found no nexus between appellant's actions and his fitness to teach, and that any other sanction would constitute cruel and unusual punishment.

After receiving the report and seeking and obtaining clarification from the faculty committee, President Johns decided to disagree with the committee. Specifically he found significant evidence of dishonesty and unprofessional conduct and an impact upon appellant's ability to teach, and he concluded that the discipline recommended was "virtually useless" and would not protect the University's interests. He determined that dismissal was the appropriate sanction.

This case then proceeded to arbitration. In a lengthy decision the arbitrator held that the committee's findings were not supported by the evidence

and its conclusion was "clearly inappropriate and unreasonable." He upheld the president's decision that dismissal was the appropriate sanction. Appellant thereafter received notice of his dismissal from the chancellor.

Appellant filed a petition for a writ of administrative mandate. The trial court found that no cause of action had been stated because: "No grounds for vacating the arbitrator's award pursuant to Code of Civil Procedure section 1286 are found in the petition." Nevertheless, the trial court reviewed the record and exercised its independent judgment. It upheld appellant's dismissal. This appeal followed.

## DISCUSSION

### I

In announcing his intended decision the trial judge indicated that perhaps the sole remedy which appellant could assert would be a petition to vacate the arbitrator's award under Code of Civil Procedure section 1285 et seq. In his statement of decision the court indicated that no grounds for vacating the arbitrator's award were set forth. The court was correct in that ruling. Code of Civil Procedure section 1286.2 provides the grounds for vacating an arbitration award, none of which are alleged or supported in this record.[3] ▮ Appellant contends, however, that he was entitled to review under Code of Civil Procedure section 1094.5 because the limited form of review under the university procedure is not the kind of "arbitration" contemplated by Code of Civil Procedure section 1280 et seq. Those sections, he asserts, only apply where there is an evidentiary hearing before an arbitrator who is the trier of fact and who issues his own decision. As appellant concedes, this distinction was rejected in *MacDonald* v. *San Diego State University* (1980) 111 Cal.App.3d 67 [168 Cal.Rptr. 392].)

There San Diego State University (SDSU) contended that "the 'arbitration' specified in the university's grievance procedure is not an arbitration as defined in Code of Civil Procedure section 1280 et seq., and thus is not

---

[3]Code of Civil Procedure section 1286.2 provides: "Subject to Section 1286.4, the court shall vacate the award if the court determines that: [¶] (a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

entitled to confirmation. SDSU reaches this conclusion by examining certain differences between the general provisions of the Code of Civil Procedure relating to the conduct of arbitration proceedings (Code Civ. Proc., § 1282 et seq.) and the Executive Order No. 240 method of arbitration. Perhaps most notable among the differences is the fact the arbitrator under the executive order is precluded from having a hearing and in reaching decision may consider only the report of the grievance committee, the written decision of the president, the written arguments received in connection with the arbitration, the materials the committee considered and, if desired, the recording of the grievance committee hearing (Exec. Order No. 240, §§ 15.2, 15.3). By comparison the Code of Civil Procedure provisions contemplate an evidentiary hearing before the arbitrator by permitting counsel, subpoenaed witnesses and documents, sworn testimony and cross-examination (Code Civ. Proc., §§ 1282.4-1282.8). Under the code, however, much of the procedure is subject to the agreement of the parties (Code Civ. Proc., §§ 1282, 1282.2)." (*Id.*, at p. 76; fn. omitted.) Rejecting that contention, the Court of Appeal stated: "The ability of the parties to fashion their own arbitration agreement convinces us there is no legal impediment to judicial confirmation of the award as was done here under Code of Civil Procedure section 1285 et seq. Given the strong public policy in California favoring peaceful resolution of employment disputes by means of arbitration and the requirement we indulge in every intendment to give effect to such proceedings (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261]), and particularly considering the Legislature's use of the commonly understood words 'arbitrator' and 'arbitration' in Education Code section 89542.5, it was fully appropriate to use the Code of Civil Procedure provisions for confirmation of the award as was done here." (*Id.*, at pp. 76-77.)

This decision supports the trial court's conclusion that appellant's appropriate remedy was to move to set aside the arbitrator's decision rather than a petition for a writ of administrative mandate. Appellant asserts that *MacDonald* involved a grievance, whereas his case involves a disciplinary action, and that he should thus be entitled to review by administrative mandate. This contention overlooks the fact that appellant was entitled to a hearing before the State Personnel Board and review by administrative mandate, but that he chose to proceed with a faculty hearing and ultimate arbitration. This decision was entirely committed to appellant and his choice of the procedure with ultimate final decisional authority in an arbitrator must be held binding upon him.

In any event, it is unnecessary for us to determine whether a petition to set aside the arbitrator's award was appellant's sole remedy. Although the

trial court believed that it was, the court nevertheless considered the record and exercised its independent judgment. Thus, even if we held that the court erred in determining that a petition to vacate the arbitrator's award was appellant's sole remedy, we would find no prejudice since in fact appellant received review by administrative mandate.[4]

## II

Appellant contends he was denied procedural and substantive due process by the procedure followed. He asserts that the procedure impermissibly embroils the president in the function of both prosecutor and decisionmaker, permits ex parte communications from prosecutorial officers, permits decision by the president without having heard the evidence, permits the president to prejudge the case and thus creates an interest in upholding his own decision, requires the president to evaluate his own prior position, and fails to provide standards for the president to utilize in reaching his decision.

■ Initially, we must note that the procedure utilized in this case was not the exclusive procedural means by which the appropriate sanction could be determined. Appellant had the absolute right to have his cause determined through a hearing before the State Personnel Board. Had he desired such a hearing he could have and should have opted for it. By choosing to proceed in the manner in which he did, appellant must be held to have waived a hearing in strict conformance with State Personnel Board procedures. Appellant may not be permitted to elect the procedure followed and speculate upon a favorable result, while at the same time reserving objection to the proceedings. (See *O'Malley* v. *Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110-111 [308 P.2d 9].) ■ We thus proceed to review the record to determine whether the procedure followed deprived appellant of fundamental fairness, but without insisting upon identical procedures as would apply in State Personnel Board hearings.

The benefit to appellant of electing the optional procedure is apparent. After the initial investigation the President determined that dismissal would be an appropriate sanction. Had appellant elected a State Personnel Board hearing, and if the chancellor agreed with the president, then appellant

---

[4] In fact, had appellant chosen to proceed with a State Personnel Board hearing, review by the trial court on petition for a writ of administrative mandate would have been under a substantial evidence scope of review. (*Washington* v. *State Personnel Bd.* (1981) 127 Cal.App.3d 636, 639 [179 Cal.Rptr. 637].) Here the trial court expressly exercised its independent judgment and thus appellant's contentions were considered under a more stringent standard than would have been possible had he chosen a procedure which would have authorized review by administrative mandate.

would have been notified of his dismissal. His hearing before the State Personnel Board would have been limited to consideration whether ". . . the required procedure was not followed; that there is no ground for dismissal, suspension, or demotion; that the penalty is excessive, unreasonable, or discriminatory; or that the employee did not do the acts or omissions alleged . . . or that the acts or omissions alleged . . . were justified." (Ed. Code, § 89539.) It is clear from the record that appellant was convicted of a felony involving dishonesty, and there is no suggestion of justification. As a matter of law his conviction was ground for sanction. (Ed. Code, § 89535, subd. (g).) Accordingly, in practical effect, a hearing before the State Personnel Board would have been limited to a consideration whether the sanction of dismissal was excessive, unreasonable or discriminatory. It may be noted that public employees are frequently dismissed for acts involving dishonesty. (See *Washington* v. *State Personnel Bd., supra,* 127 Cal.App.3d at pp. 642-643; *Warren* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 95, 108 [156 Cal.Rptr. 351].) Accordingly, appellant could well conclude that the university's decision to dismiss would be upheld by the State Personnel Board.

In contrast, by selecting the optional hearing procedure appellant was able to avoid an immediate determination that dismissal was appropriate, and in further proceedings no cognizance could be taken of the initial recommendation. (Exec. Order 245, § 5.3.) Appellant was entitled to a full evidentiary hearing before a faculty committee chosen by lot from his peers. (Exec. Order 245, §§ 6.0-7.12.) The committee was required to render a decision based solely upon the notice of the charges, the argument and evidence presented at the hearing, and any legal opinions received from the office of the general counsel. (Exec. Order 245, §§ 8.0-8.3.) When the committee makes its decision it forwards its written decision, all physical evidence, and the tape recordings of the hearing to the president. (Exec. Order 245, § 8.4.)

Contrary to appellant's suggestion, the president is not free to reject the committee's decision arbitrarily. The president is required to concur with the committee except when: (1) The evidence at the hearing supported different findings of fact or did not support some or all of the committee's findings; (2) the committee's findings supported a conclusion respecting causes for discipline different than the one arrived at by the committee; (3) the discipline recommended by the committee was not appropriate to the causes for discipline established; (4) the committee made an error of law; or (5) the committee violated proper procedures in a way that substantially affected its recommendation. (Exec. Order 145, § 9.4.) If the president's

decision differs from the committee's decision, then he must state his "compelling reasons" for disagreement in detail and in writing.

When the president makes his decision, that decision is final at the campus level. If the president disagrees with the faculty committee his decision is subject to binding arbitration at the request of either the person charged or the president. (Exec. Order 245, § 10.) When the matter is submitted to an arbitrator, each party may submit written arguments, but no other communication is permitted. (Exec. Order 245, § 10.7.) The arbitrator is required to review all of the documents submitted, and must listen to the tapes of the hearing if the facts of the case make it appropriate. (Exec. Order 245, § 10.14.) The arbitrator is required to adopt the faculty committee's decisions unless he or she finds that the reasons for the president's disagreement are compelling. (Exec. Order 245, § 10.12.) The arbitrator's decision is binding upon the person charged and the president; however, the Chancellor may reject it and take such action as he or she considers appropriate. (Exec. Order 245, §§ 10.17, 11.2.)

A somewhat similar procedure was considered in *Toney* v. *Reagan* (9th Cir. 1972) 467 F.2d 953. There the Chancellor of the California State College System established a grievance hearing procedure which was applicable to probationary (nontenured) professors. Nontenured teachers of Fresno State College filed a federal civil rights action when they were notified of their nonretention. The teachers contended they were not required to exhaust their administrative remedy by filing a grievance because the procedure was inadequate. They contended that in this grievance procedure they were not entitled to representation by counsel, the faculty panel could conclude that no evidentiary hearing was necessary on the basis of the claim, they received no notice of the reasons for their nonretention, and finally that the president, who was the one that determined they should not be retained, was the ultimate decisionmaker.

In contrast to the grievance procedure considered in *Toney*, appellant was entitled to be represented by counsel. (Exec. Order 145, §§ 7.0-7; 7.2.) He had the right to an evidentiary hearing and the faculty committee could make its decision only on the basis of material presented at the hearing. (Exec. Order 245, § 8.3.) Appellant was entitled to notice at each stage of the proceedings. (Exec. Order 245, §§ 5.1.5, 5.2.1.) Like the procedure involved in *Toney* the president could only disagree with the faculty committee for compelling reasons and his decision was subject to review by the chancellor and, unlike the situation in Toney, by an impartial arbitrator.

In *Toney*, the federal court of appeals held the grievance procedure was adequate, stating: "Our quest . . . is not for the . . . hearing such as Perry

v. Sinderman [(1972) 408 U.S. 593, 33 L.Ed.2d 570], tells us that a tenured professor would command. Rather the inquiry is whether the California procedure is fair and adequate. We conclude that the state remedy was fair and adequate as to these appellants . . . ." (467 F.2d at p. 960.)

We agree with the analysis of the *Toney* court and conclude that the procedure chosen by appellant was not inherently unfair or inadequate. Appellant received a full evidentiary hearing before a faculty committee, and he makes no contention that the procedure in that hearing was in any manner inadequate. His objection is not to the hearing he received, but rather that the faculty committee's decision was not final. In short, appellant objects to the president's power to disagree with the faculty recommendation. The president's power to do so, however, was carefully circumscribed and had to be supported with detailed written reasons for disagreement. The president's decision was subject to review by an impartial arbitrator who was required to adopt the faculty committee's recommendation unless the president's "compelling reasons" for disagreement were justified. Finally, even if the arbitrator upheld the president's decision, the chancellor was entitled to reject the decision if he believed the decision to be inappropriate.

While this procedure may not have fulfilled the strict requirements of the type of administrative hearing to which appellant's tenured status entitled him, it must be reiterated that this was the procedure which appellant, in his sole discretion, chose. A person may elect to forego strict legal procedures to which he might be entitled and where he does so he cannot be permitted to speculate upon a favorable result in his chosen proceeding and then refuse to be bound by an adverse decision. (*Forrest* v. *Hotel Conquistador, Inc.* (1961) 193 Cal.App.2d 503, 509 [14 Cal.Rptr. 394]. See also *O'Malley* v. *Petroleum Maintenance Co., supra,* 48 Cal.2d at pp. 110-111.) The optional type of hearing provided for in the Education Code and by state university regulations was not created to deny a tenured teacher his due process rights, but rather was designed to entitle him to choose a different, and perhaps more elastic, means of vindicating his rights.

We have reviewed the record to determine whether the evils appellant fears in fact occurred. We conclude that they did not. Appellant insists that the procedure requires the president to make an initial determination that dismissal is an appropriate sanction, and thus gives him an interest in upholding his initial reasoning. To the contrary, President Johns, in his deposition, testified that he considered dismissal a legal option but had not considered the other side of the question because he did not have enough information. He felt that if this matter was going to a disciplinary hearing he would not want to make that kind of a decision until he had more infor-

mation from a panel, so he merely mentioned the most serious legal option. He did not make up his mind that dismissal was called for, but only believed that was one of the options. He insisted that he did not make the decision to dismiss early. No evidence rebuts this testimony, and we find no pre-judgment which would preclude President Johns from acting in the matter. (See *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 782 [122 Cal.Rptr. 543, 537 P.2d 375].)

Appellant contends President Johns received ex parte communications from his accusers in determining the appropriate penalty. The record rebuts this contention. Leo Hertoghe, the CSUS administrative officer, testified in his deposition that the only conversations he had with Johns prior to the faculty hearing concerned strictly procedural questions. He insisted that President Johns does not discuss appropriate action with him, and while the case is being heard he absolutely does not discuss it with the president or anyone else in the administration. President Johns agreed with these statements and stated that he makes it a "very strong practice" not to get in-volved in any discussions during the proceedings. He never asks Hertoghe or anyone else about the action he should take, and he considers that it would be improper and breach of confidentiality for anyone to tell him. He is aware that the decision-making authority is his and he stays aloof from others so that he can remain objective to make his decision. The facts of this case do not show a foreclosure of fairness as a practical or legal matter and there is no cause for reversal. (See *Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648, 658 [163 Cal.Rptr. 831].)

██ Appellant contends that the university procedure is invalid because it does not require the president to review the evidence and thus violates the principle that "he who decides must hear." We cannot agree. The pro-cedure requires the president to concur with the faculty committee unless he finds compelling reasons for disagreement, one of which in is erroneous factual findings by the committee. If the president does not concur then he is required to set forth his reasons in detail. It would not be possible for the president to comply with this mandate without reviewing the record.

Appellant asserts that President Johns in fact did not review the record. In his deposition Johns testified that he had listened to most of the tapes: "I usually listened to all of the opening statements, and I usually listened to all of the closing statements. Then as the proceedings go on, if they are very long, I try to listen to a part of all of the people who are called as witnesses. I don't know that I would have listened to everyone, but I wouldn't have missed many." The tapes were somewhat in excess of 20 hours, and Johns stated that he listened to 18 or 20 hours of them. With

regard to the documentary evidence Johns testified: "Well, in many cases there were letters that seemed to each say about the same thing. So I would look at the first few, and I would look to see who wrote some of these letters to get some feeling of the credibility of the writers. . . . I started from the top. I did not read every piece, but I did it myself. I have a normal practice of going through these materials personally. . . . I follow this normal practice even on the standard promotions along with grievance and discipline. I go through every folder of every person promoted at our university personally. I don't ask for summarizations. I read grievance and discipline cases myself and go through the back-up material, and that's my standard practice. I did that in this case also."

■ "Due process requires a fair trial before an impartial tribunal, and that requires that the person or body who decides the case must know the evidence, but due process is not interested in mere technical formalism. It is the substance that is determinative of whether due process has been afforded." (*Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, 401 [184 P.2d 323].) ■ "The rule [that he who decides must hear] does not require that the person not present at the taking of evidence actually read the record or a transcript. The extent to which an independent study of the evidence in the record is necessary to the required exercise of informed judgment must be left to the wisdom and practical good sense of the agency." (2 Cal.Jur.3d, Administrative Law, § 224, pp. 460-461. See also *Chosick* v. *Reilly* (1954) 125 Cal.App.2d 334, 337 [270 P.2d 547].) In his faculty hearing appellant introduced a great deal of cumulative and marginally relevant material. We cannot say he was denied substantive fairness because President Johns did not personally read every letter or hear every witness' entire testimony. It is clear that Johns reviewed the record to a sufficient extent to enable him to make an informed judgment.

■ In any event, procedural fairness is assured where a person is entitled to judicial review under an independent judgment test. (*Cooper* v. *State Bd. of Medical Examiners* (1950) 35 Cal.2d 242, 246 [217 P.2d 630, 18 A.L.R.2d 593]; *Gore* v. *Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184, 190 [167 Cal.Rptr. 881].) In this case appellant received independent review by an impartial arbitrator and the trial court also independently reviewed the evidence and exercised its independent judgment. We find no denial of fairness to appellant. We conclude that, on the record, appellant was not denied procedural and substantive due process.

### III

Appellant next argues that the trial court erred in concluding that the arbitration cured the earlier due process violations. The flaw in that argu-

ment is that the trial court, after an independent review of record, correctly concluded that appellant received both procedural and substantive due process throughout the administrative proceedings. For that reason, appellant's reliance on *Hackethal* v. *California Medical Assn.* (1982) 138 Cal.App.3d 435 [187 Cal.Rptr. 811], is misplaced. There the trial court found that the disciplinary proceedings of a county medical society instituted against a physician did not meet the common law standards of fair procedure. The Court of Appeal held that the subsequent independent review by the state medical association of the record established in the county society's proceeding did not have a curative effect sufficient to sustain the physician's expulsion. *Hackethal* merely stands for the proposition that if the administrative proceeding is fatally defective, a fair review of that proceeding will not cure the defect. Since the administrative proceeding in this case did not deprive appellant of due process, *Hackethal* has no application.

## IV

Although the trial court indicated that a motion to vacate the arbitrator's award was appellant's sole remedy, it nevertheless exercised its independent judgment on the record and upheld appellant's dismissal. Appellant contends the trial court erred in determining that dismissal was not an abuse of discretion. ■ We have reviewed the record and are in agreement with the trial court. As we have previously noted, dishonesty is a well established ground for dismissal of a public employee. (*Washington* v. *State Personnel Bd.*, *supra*, 127 Cal.App.3d at pp. 642-643; *Warren* v. *State Personnel Bd.*, *supra*, 94 Cal.App.3d at pp. 107-108.) The submission of false and fraudulent claims has been held sufficient to support the revocation of a medical license. (*Matanky* v. *Board of Medical Examiners* (1978) 79 Cal.App.3d 293, 304-305 [144 Cal.Rptr. 826].) Defendant's conviction of grand theft indisputably reflects adversely upon his character for honesty. (See *People* v. *Fries* (1979) 24 Cal.3d 222, 229 [155 Cal.Rptr. 194, 594 P.2d 19].) As such his conviction was sufficient cause for dismissal.

Appellant argues, however, that mitigating facts were established, and that evidence of his dishonesty was equivocal. It is true appellant produced evidence in mitigation. Mitigation, however, is a matter that should be and was considered in determining the appropriate penalty. (*Matanky* v. *Board of Medical Examiners*, *supra*, 79 Cal.App.3d at pp. 304-305.) Appellant's evidence does not compel the conclusion that dismissal was inappropriate. (*Ibid.*)

With regard to appellant's contention that the evidence against him was equivocal, we must agree with the president, the arbitrator, and the trial

court that the evidence was not equivocal; it was convincing. Appellant submitted 119 bills to Medi-Cal for services his wife had performed although she was not qualified or eligible for Medi-Cal reimbursement. On these forms he billed at his rate of compensation as a licensed psychologist ($80 per service) rather than his wife's rate of compensation as a licensed marriage and family counselor ($40 per service).[5] He attested that he had personally performed the services. With regard to the Serene Homes billings, as the faculty committee noted, he billed at times for more hours of service than he had spent at the homes. Finally, and most significantly, with regard to the Tanner and Mizell children, he submitted 31 bills for services he had not performed. The committee's conclusion that this resulted from sloppy bookkeeping is not reasonable, since in each case appellant submitted billing forms in which he purported to diagnose the condition requiring the service, and declared under penalty of perjury that he had performed the service. On the record it appears that appellant was in fact guilty of the crime of which he was convicted and his honesty was significantly impugned. Although reasonable minds might differ as to the appropriate sanction, the penalty of dismissal was not an abuse of discretion. (*Matanky* v. *Board of Medical Examiners, supra,* 79 Cal.App.3d at pp. 304-305.)

The judgment is affirmed.

Regan, Acting P. J., and Carr, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 29, 1984.

---

[5]At the hearing before the faculty committee it was established that Medi-Cal reimburses for services at a flat rate regardless of the fee normally charged by the professional. Thus appellant's actions would not have resulted in an increased charge to Medi-Cal for the services performed. It is, however, indicative of an intent to convince Medi-Cal that appellant, rather than his wife, was performing the services for which bills were submitted.