Filed 8/27/14  Blanchard v. Sotelo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JAMES BLANCHARD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>EDMUND SOTELO, as City Manager, etc.,<br><br>    Defendant and Respondent;<br><br>OXNARD FIRE DEPARTMENT et al.,<br><br>    Real Parties in Interest and Respondents. | 2d Civil No. B250121<br>(Super. Ct. No. 56-2011-00403332-CU-WM-VTA)<br>(Ventura County) |

James Blanchard appeals a judgment denying his petition for writ of administrative mandamus.  (Code Civ. Proc., § 1094.5.)[1]  He sought a review of the decision of respondent Edmund Sotelo, the City Manager for the City of Oxnard ("City Manager").  City Manager upheld the disciplinary action of real parties in interest Oxnard Fire Department and Fire Chief Randy Milligan to demote Blanchard from fire captain to fire engineer.[2]  We conclude, among other things, that:  1) substantial evidence supports the trial court's finding that Blanchard was demoted because he abused his authority as fire

---

[1] All statutory references are to the Code of Civil Procedure.

[2] Unless otherwise indicated, defendant and real parties in interest are referred to as "the City."

captain and committed dishonest acts; 2) the City did not abuse its discretion by demoting Blanchard to fire engineer; and 3) Blanchard has not shown that the administrative procedure denied him due process. We affirm.

FACTS

Blanchard was a fire captain in the City's fire department. On October 8, 2008, Fire Chief Milligan gave notice to Blanchard that the department intended to demote him "from Fire Captain to the rank of Fire Engineer" because of "improprieties regarding [his] use of sick leave, family sick leave and numerous overtime opportunities."

In the notice, Milligan said Blanchard, among other things, had "admitted" to: 1) "retroactively changing a work code, thereby falsifying public documents"; 2) "replacing the original roster with a falsified roster, thereby exhibiting either extremely poor judgment or a desire to conceal [his] actions"; and 3) "discarding the original roster" showing poor judgment or an intent to conceal his actions.

Blanchard appealed and received a hearing before an administrative law judge (ALJ). Assistant Fire Department Chief Brad Windsor testified that Blanchard "changed a work code, he falsified public records," and "he was dishonest about it."

Blanchard testified that he changed an employee leave time entry from family sick leave to regular sick leave on a day he "wasn't ill." When asked if "that was an act of dishonesty," he responded, "It wasn't my intention to be dishonest but looking at it I would come to that same conclusion." He also testified that he replaced a true "roster" and substituted "a false roster" in its place. He said, "At the time it didn't seem like a big deal, but after evaluating what I did, I believe it was a poor decision."

The ALJ in a proposed decision found, among other things, that Blanchard was disciplined for his "falsification of time records." "After [he] manipulated the system, he removed the original printed record and replaced it with the changed record." But the City did not follow the proper disciplinary procedures. Consequently, the ALJ recommended that Blanchard be "reinstated to the rank of Fire Captain . . . ."

Under the City's procedures, the final administrative decision-maker is the City Manager. In his decision, City Manager said he declined to adopt the ALJ's proposed

2.

decision. He ruled: 1) "Blanchard's demotion to fire engineer was an appropriate disciplinary decision" (boldface omitted), and 2) the administrative procedures were adequate to protect Blanchard's "rights to contest the charges against him."

Blanchard filed a petition for writ of administrative mandamus to challenge the City Manager's decision. The trial court denied the petition. It ruled his demotion was proper because he was "disciplined for abusing his position and being dishonest."

DISCUSSION

*The Demotion*

Blanchard contends the trial court erred in upholding his demotion because changing his position from fire captain to fire engineer was excessive punishment for a "time card error."

The City claims: 1) Blanchard was not demoted for an ordinary mistake, and 2) the trial court properly found that his demotion was justified for acts of dishonesty on the job. We agree.

In an administrative mandamus review of a public agency's decision involving the fundamental rights of an employee, the trial court uses its independent judgment on the evidence in the administrative record. (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967, fn. 1.) "The appellate court must sustain the superior court's factual findings if substantial evidence supports them." (*Ibid.*)

The trial court found Blanchard "was disciplined for abusing his position *and being dishonest*." (Italics added.) Substantial evidence supports these findings.

Blanchard testified that he changed a leave time entry from family sick leave to regular "sick leave" on a day he "wasn't ill" and that he substituted a "false" roster for the true one. Windsor testified Blanchard "changed a work code, he falsified public records," and "he was dishonest about it." He said, "I believe he printed out a roster to conceal his actions. He admitted that he knew the policy regarding the use of family sick leave and he violated [it]." His demotion involved "trust issues." Windsor said, "I felt that he was untrustworthy . . . ."

3.

Blanchard notes the City did not provide him his full entitlement to family sick leave. The City acknowledges this mistake. But, as the trial court noted, "an error the Department had made in assigning family sick leave hours does not make the dishonesty excusable."

Blanchard relies on his own testimony to challenge the trial court's rulings. But the issue is not whether some evidence supports Blanchard, it is only whether substantial evidence supports the findings. Moreover, the City Manager and the trial court found Blanchard was not credible. We do not weigh the evidence or decide the credibility of the witnesses. (*Guymon v. Board of Accountancy* (1976) 55 Cal.App.3d 1010, 1016 ["The fact finding function is . . . that of the trial court, and we are bound by its determination"].)

"We may disturb the penalty the agency imposed only if it is clear that the agency abused its discretion." (*Haney v. City of Los Angeles* (2003) 109 Cal.App.4th 1, 11.) "'[T]he overriding consideration in these cases is the extent to which the employee's conduct resulted in . . . "[h]arm to the public service."'" (*Ibid.*)

The City argues, "Dishonest conduct can warrant serious discipline, up to and including termination." In cases involving employees of government agencies, courts have ruled that termination of employment is appropriate for dishonest acts. (*Pegues v. Civil Service Com.* (1998) 67 Cal.App.4th 95, 109.) "[T]he Department must be allowed to respond swiftly and decisively to violations of the public trust in order to protect the public fisc and preserve the Department's image in the community and among its own ranks. Case law recognizes that '[d]ishonesty is incompatible with the public trust.'" (*Id*. at p. 107.)

As fire captain, Blanchard held a position of public trust. As noted in the City Manager's decision, "Fire captains are supervisors and trainers of field and technical fire fighting personnel." They "prepare official reports" and "are expected to conduct themselves in such a manner as to not reflect discredit upon the City." The trial court did not err by ruling the City properly demoted Blanchard for dishonesty.

4.

*Was Blanchard Demoted to the Correct Position?*

Blanchard contends he was improperly demoted to fire engineer which was a reduction in rank of two job classification positions. He claims he only should have been demoted to "the next lower [job] classification" of fire inspector. (Italics omitted.)

The City's "Personnel Rules & Regulations" section VI, article 2(A) provides, "In the event that the responsible department head finds that any employee is *performing inefficiently*, *or is not complying with these personnel policies* or those personnel policies within his department, he *may* recommend to the City Manager that such employee *be demoted to the next lower classification*." (Italics added.)

Blanchard claims these rules require the City to demote him to one lower job classification. But the regulation is not phrased in mandatory language, it is permissive, e.g., "*may* recommend." A one-step limit may apply for negligent or inefficient work performance. But, as the City notes, Blanchard's conduct was more serious. It falls within a category of conduct for which the range of discipline includes termination. (*Pegues v. Civil Service Com.*, *supra*, 67 Cal.App.4th at p. 109.) In his decision, the City Manager found: 1) his demotion "is *the minimum response* that the Department could have made in these circumstances," and 2) the discipline was lenient because his "acts of dishonesty *warrant dismissal*." (Italics added.) The City Manager was aware of the City's broader authority in more serious misconduct cases. The City's "Fire Rules & Regulations," section 3(A)(1) provide, in part, "The extent of the disciplinary action shall be commensurate with the offense." These rules vest the fire chief with broad authority to select "*demotion*, *dismissal*, or *other action* deemed appropriate by the chief . . . ." (Italics added.) Blanchard has not shown why the City was confined to a one-step limit in cases where it could have sought more serious punishment -- termination.

But even if Blanchard's interpretation is correct, there is substantial evidence that he was demoted to only one lower job classification. Windsor testified that the positions of fire inspector and fire engineer are in "the same classification." Blanchard cites other evidence which he claims supports a different conclusion. But the issue is not whether some evidence supports appellant, it is only whether substantial evidence supports

5.

the finding.  Moreover, there was evidence showing a valid justification for demotion to fire engineer instead of fire inspector.  Windsor said the fire engineer position is subject to more supervision than a fire inspector.  He said, "[T]he fire engineer is supervised at all times."  He testified that because he "felt . . . [Blanchard] was untrustworthy, [Blanchard] needed to be supervised at all times, that's why [he] recommended the rank of fire engineer."

*The Trial Court's Consideration of the Proposed ALJ Decision*

Blanchard claims the trial court did not consider the proposed ALJ decision.  But the court cited that decision in its findings.  "Once rejected, the ALJ's decision *ceased to exist* and the case was decided on the record."  (Italics added.)  By this the court did not mean the proposed decision vanishes.  It meant its legal effect is not the relevant issue where the mandamus petitioner is challenging the final decision which overrides it -- the City Manager's decision.  "[I]t is clear that from the moment of the agency's rejection thereof, [the proposed administrative decision] serves no identifiable function in the administrative adjudication process or, for that matter, in connection with the judicial review thereof."  (*Compton v. Board of Trustees* (1975) 49 Cal.App.3d 150, 158.)

Blanchard suggests the trial court should have adopted the ALJ's proposed decision instead of the City Manager's final decision.  He cites portions of the ALJ's decision and claims the City retaliated against him by imposing harsh punishment.  The City claims Blanchard did not plead a retaliation cause of action or cite sufficient facts from the record to support such a claim.  These objections have merit.  His five-page mandamus petition does not mention the word "retaliation."  Blanchard had the opportunity to testify or present evidence on this issue at the mandamus hearing (§ 1094.5, subd. (e)), but he elected not to.  The trial court independently reviewed the record and made its own findings.  (*Guymon v. Board of Accountancy*, *supra*, 55 Cal.App.3d at p. 1016.)  It exclusively decides the weight and credibility of the evidence in the administrative record.  (*Ibid.*)  The finding that the City properly demoted him was a rejection of his claims that it acted unlawfully.

*Due Process Notice*

Blanchard contends the City violated due process by not specifying all the consequences he would face as a result of a demotion in its notice of intent to impose discipline. "[P]reremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 215.)

Here the "notice of intent to discipline" complies with these standards. It included a detailed summary of the charges that Blanchard had falsified public documents and the reasons for proposed discipline. It advised him that the City was seeking: 1) his demotion from "Fire Captain to the rank of Fire Engineer," 2) "[i]mposition of a Last Chance Agreement for a period of two years from date of discipline," and 3) "[l]oss of privileges . . . ." It advised him of the applicable provisions the City's personnel manual he violated and how he could contest the proposed action.

Blanchard claims the notice should have advised him that as a result of his demotion the City would place him on probation and restrict his overtime. But the notice complied with the *Skelly* requirements (*Skelly v. State Personnel Board*, *supra*, 15 Cal.3d at p. 215), and he was not denied due process. He had the opportunity to challenge any action taken as a result of his demotion in the administrative proceedings and the trial court. (*Gore v. Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184, 190.) "The requirements of due process of law are fully met where, as here, licensee was accorded judicial review of the administrative decision in which the court weighed the evidence and rendered its independent judgment on the merits." (*Ibid.*) Blanchard did not testify at the mandamus hearing. He has not shown that the City's alleged notice deficiency impeded his procedural rights or had a prejudicial impact.

*The City Manager's Concurrence Prior to Initiating Disciplinary Action*

Blanchard contends the City violated due process because it did not obtain the "concurrence" of the City Manager before initiating disciplinary action.

7.

Blanchard notes that a provision of the City's administrative manual, *adopted in 1988*, provides, in relevant part, "Prior to taking disciplinary action against a permanent, nonprobationary employee . . . , the employee's program leader shall ensure that the following procedures are strictly observed. . . . [¶] . . . The City Manager's concurrence is required prior to the imposition of demotions and discharges."

But in 2007, the City and Local 1684, the International Association of Firefighters AFL-CIO, signed a memorandum of understating (MOU) that changed the disciplinary procedure. The MOU provided a new review process where the employee could first seek an advisory arbitration decision on discipline which is submitted to the City Manager to finally "determine whether or not to adopt the recommendation of the arbitrator." Unlike the administrative manual, the MOU does not contain a requirement that the City Manager must concur in the decision to initiate disciplinary action. Cities and their employee unions may supersede prior disciplinary procedures with MOU's. (*Valencia v. County of Sonoma* (2007) 158 Cal.App.4th 644, 648-649.) The MOU then becomes the binding procedure. (*Ibid.*)

Blanchard claims the administrative procedure was invalid and unfair because the City Manager did not approve initiating the disciplinary action. Courts have upheld some administrative procedures where the decision-maker is required to participate in investigating or approving the initiation of a disciplinary action and also deciding the ultimate merits. (See, e.g., *Griggs v. Board of Trustees* (1964) 61 Cal.2d 93, 98; *Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 581-582.)

But this is a different type of administrative procedure. Here the MOU does not require the City Manager to participate in initiating disciplinary actions. The City claims Blanchard is attempting to add an unauthorized procedure to the MOU which would undermine the neutrality of the decision-maker. It argues: 1) Blanchard's position would have the City Manager wear two hats -- the initial prosecutor and the ultimate decision-maker, and 2) therefore his non-involvement in initiating the discipline was proper and provided Blanchard with a valid and fair procedure.

8.

The City is correct. "[T]he combination of prosecutorial and adjudicative functions is the most problematic combination . . . ." (*Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 93.) One who initiates the action "is a partisan advocate for a particular position . . . ." (*Ibid.*) "Such a role is inconsistent with the objectivity expected of administrative decision-makers." (*Ibid.*) Consequently, fair administrative procedure requires a "separation of adjudicative and prosecutorial functions." (*Rondon v. Alcoholic Beverage Control Appeals Bd.* (2007) 151 Cal.App.4th 1274, 1284; *Doyle v. City of Chino* (1981) 117 Cal.App.3d 673, 681-682 [city manager who terminated employee cannot sit in judgment about that decision]; *Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 659 [those who initiate the charges should not be on the board that ultimately decides the merits]: *Mennig v. City Council* (1978) 86 Cal.App.3d 341, 351 ["The decision may not be made by a decisionmaker who has become personally 'embroiled' in the controversy to be decided"].)

Adopting Blanchard's position would mean the City Manager would face a conflict of interest. He would be deciding the validity of his initial decision to authorize discipline. This could influence the fairness of his final administrative decision. (*Applebaum v. Board of Directors*, *supra*, 104 Cal.App.3d at pp. 659-660.) The City Manager said if he had to initially "concur" in the fire chief's decision to initiate discipline, "a serious question could have arisen about whether [he] was prejudging Blanchard's culpability, thus perhaps affecting [his] ability to fulfill the role" of ultimate decision-maker. Requiring the City Manager to approve initiation of discipline means he could also review and have access to ex parte communications about the employee. (*Rondon v. Alcoholic Beverage Control Appeals Bd.*, *supra*, 151 Cal.App.4th at pp. 1284, 1288-1289.) Access to such inadmissible information could disqualify the decision-maker or invalidate the final decision. (*Ibid.*)

Blanchard's position also could influence the independence of those who render initial ALJ decisions. Those ALJ's would know the one who decides whether to adopt their decisions is also the one who initially authorized the discipline. Consequently, precluding the City Manager from initiating the disciplinary action protected Blanchard's

9.

right to a fair procedure with neutral decision-makers. (*Nightlife Partners, Ltd. v. City of Beverly Hills*, *supra*, 108 Cal.App.4th at p. 93.)

At the administrative level, Blanchard objected because the City Manager did not initiate the disciplinary action. The City Manager's response showed that even if that procedure had been followed, the result would not change. He said, "My non-participation in the process *did not deprive Blanchard of any rights to contest the charges against him*. If, as Blanchard argues, the Rules merely assigned me the role of making a preliminary determination that the action is justified to go forward, essentially one of determining probable cause, that determination would have added little except *another check mark in another box . . . .* [Fn. omitted.] *That is a judgment I can make as well at this time*." (Italics added.)

Moreover, Blanchard has not shown the City Manager's absence from the initial disciplinary stage had any impact on his right to challenge the City's actions in the administrative proceedings and the trial court. (*Samaan v. Trustees of Cal. State University & Colleges* (1983) 150 Cal.App.3d 646, 661 ["procedural fairness is assured where a person is entitled to judicial review under an independent judgment test"].) In addition, irregularities in administrative proceedings do not require reversal of mandamus judgments without a showing of prejudice. (*Russ v. California Unemployment Ins. Appeals Bd.* (1981) 125 Cal.App.3d 834, 848.) Blanchard has not made such a showing.

*The Opportunity to Work Overtime*

Blanchard claims the City improperly restricted him from receiving overtime. But he has not shown how this requires reversal of the superior court judgment which is the subject of this appeal. In his decision, the City Manager found that the "Department has conceded that [Blanchard] was improperly denied the opportunity to work overtime . . . ." The City Manager required the fire department to "determine what Blanchard could have received in overtime pay based on those hours and on the salary he received while denied overtime work." There is no showing of any trial court error because the court did not overturn this portion of the City Manager's decision which is favorable to Blanchard.

*The 10 Percent Staff Pay Increase and Other Issues*

Blanchard claims the City improperly denied him a 10 percent pay increase while he was assigned to the "Training Division." But in his decision, the City Manager agreed with Blanchard and ordered the fire department to determine "what Blanchard should have received in staff pay." The trial court adopted the City Manager's decision on this issue which was favorable to Blanchard.

Blanchard contends the City did not pay his overtime and staff pay. He claims he suffered harm because the City improperly placed him on probation for one year. The City notes he completed his probationary status requirement, and he did not present evidence on these "harm" and monetary issues in the trial court. The trial court found Blanchard did "not offer evidence of any harm." At the mandamus hearing, Blanchard's counsel made arguments, but Blanchard did not testify. Blanchard may not claim error because he had the opportunity to present evidence on these issues at the trial court hearing (§ 1094.5, subd. (e)), but he elected not to. Nor has he cited sufficient facts from the record to support these claims. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

We have reviewed Blanchard's remaining contentions and we conclude he has not shown trial court error.

The judgment is affirmed. Costs on appeal are awarded in favor of the respondents.

<u>NOT TO BE PUBLISHED.</u>


                                        GILBERT, P.J.
We concur:



YEGAN, J.



PERREN, J.


11.

Rebecca Riley, Judge

Superior Court County of Ventura

_____

Meghan B. Clark, Danielle R. Everson for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Jeffrey C. Freedman, Julie L. Strom for Defendants, Real Parties in Interest and Respondents.